Peter A. Ivanick
Allison H. Weiss
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Todd L. Padnos (admitted *pro hac vice*)
DEWEY & LEBOEUF LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303
Tel: (650) 845-7000
Fax: (650) 845-7333

*Proposed Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
*In re* :
: **Chapter 11**
**AMBAC FINANCIAL GROUP, INC.,** :
: **Case No. 10-15973 (SCC)**
Debtor. :
:
------------------------------------------------------------x

**DEBTOR'S MOTION FOR ORDER PURSUANT TO SECTIONS
105(a), 363(b), 507(a)(4), 507(a)(8), AND 541(b) OF THE BANKRUPTCY
CODE (I) AUTHORIZING THE DEBTOR TO PAY (A) TAXES AND RELATED
EXPENSES, (B) CERTAIN AMOUNTS PAYABLE TO MJK TAX SERVICES, AND
(C) CERTAIN WAGES, BENEFITS, AND REIMBURSABLE EXPENSES, AND
(II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO
<u>HONOR ALL RELATED FUND TRANSFER REQUESTS</u>**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Ambac Financial Group, Inc. (the "<u>Debtor</u>"), as debtor and debtor in possession in the

above-captioned chapter 11 case (together with its non-debtor affiliates, "<u>Ambac</u>"), by and

through its undersigned proposed counsel, hereby submits this motion (the "Motion") and respectfully represents:

**Jurisdiction**

1. This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On November 8, 2010 (the "Commencement Date"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its businesses and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On November 17, 2010, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors [Docket No. 27] (the "Committee"). No trustee or examiner has been appointed in this chapter 11 case.

4. The Debtor is a holding company and a Delaware corporation. The Debtor's principal operating subsidiary, Ambac Assurance Corporation ("AAC"), is a Wisconsin-domiciled financial guarantee insurance company whose business includes the issuance of financial guarantee insurance policies to support public finance, structured finance, and international finance transactions.

5. Additional information regarding the Debtor's capital structure and events leading up to the commencement of the Debtor's chapter 11 case is available in the *Affidavit of David W. Wallis in Support of the Debtor's Chapter 11 Petition and First Day Motions and Pursuant to Local Rule 1007-2*, filed on November 8, 2010 [Docket No. 2].

**I.    Taxes and Related Expenses**

6.     The Debtor regularly pays franchise taxes to the Delaware Secretary of State in order to maintain its existence as a Delaware corporation (the "Delaware Franchise Taxes").  The Debtor is required to make estimated Delaware Franchise Tax payments on March 1, June 1, September 1, and December 1 of each year, and was required to make an estimated Delaware Franchise Tax payment of approximately $36,000.00 on December 1, 2010.  Del. Code tit. 8 § 504(a).  However, the Debtor failed to make this payment, as such payment could potentially be considered a payment on account of a prepetition claim.  Overdue estimated Delaware Franchise Tax payments accrue interest at the rate of 1.5% per month and failure to make timely estimated Delaware Franchise Tax payments could result in the assessment of additional penalties against the Debtor.  Del. Code tit. 8 § 504(c), (f).  Further, notwithstanding section 525(a) of the Bankruptcy Code, the Delaware Secretary of State has indicated that it will designate the Debtor as "not in good standing" for failure to timely pay such taxes, which could significantly impair the Debtor's ability to do business in Delaware and complete a successful reorganization.

7.     In addition, the Debtor is required to withhold from Employee Wages (as defined below) amounts relating to federal, state, and local income taxes and social security and Medicare taxes for remittance to the appropriate taxing authority (the "Withheld Amounts").  The Debtor must then pay, from its own funds, social security and Medicare taxes and additional amounts for federal and state unemployment insurance (such amounts, together with the Withheld Amounts, are hereinafter referred to as the "Payroll Taxes").

8.     Although the Debtor is not aware of any at this time, in addition to the Delaware Franchise Taxes and Payroll Taxes, there may exist other prepetition "trust fund" type taxes, franchise taxes, business license fees, annual report filing fees, and other charges or assessments

by governmental units (together with the Delaware Franchise Taxes, the Payroll Taxes, and interest and/or penalties relating thereto, the "Taxes and Fees"), and for which, if such Taxes and Fees remain unpaid, the Debtor may incur significant additional liability.

## II. Amounts Payable to MJK Tax Services

9. The Debtor from time to time utilizes tax recovery services furnished by MJK Tax Services (the "Critical Vendor") in order to manage the payment and recovery of Delaware Franchise Taxes and refunds. The Critical Vendor's services are essential to the Debtor's ability to assure that no unnecessary tax liability is incurred and that valuable tax refunds will be recovered for the estate. The Debtor's agreement with the Critical Vendor provides that such vendor shall be paid, on a contingency fee basis, "one-third of the [Debtor's] 2008 and 2009 miscellaneous state tax benefits from one specific tax (not related to state income or sales taxes) that [the Critical Vendor] specifically identifies," *i.e.*, one-third of any refund obtained by the Debtor.

10. The Debtor is currently utilizing the Critical Vendor's services to recover tax refunds from the Delaware Department of Corporations of approximately $80,000.00 and $130,000.00 for the 2008 and 2009 calendar years, respectively. A majority of the services performed by the Critical Vendor in connection with recovering such tax refunds were performed prepetition. The Debtor believes that failure to obtain Bankruptcy Court approval to pay the Critical Vendor for services rendered prepetition could result in such vendor's refusal to provide further necessary assistance in connection with obtaining such refunds.[1]

---

[1] As described in the *Debtor's Motion for Interim Order Pursuant to Sections 105(a), 345, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (i) Authorizing Debtor to Continue Using Existing Cash Management System and Bank Accounts and Honor Related Prepetition Obligations, (ii) Extending Debtor's Time to Comply With Section 345(b) of the Bankruptcy Code, and (iii) Scheduling a Final Hearing*, filed on November 8, 2010 [Docket No. 4], AAC pays nearly all expenses for the Ambac entities. Each Ambac entity, including the

**III.     Employee Wages, Benefits, and Reimbursable Expenses**

11.     As of the Commencement Date, the Debtor employed four employees (the "Employees").  Further, as of the Commencement Date, the Employees were owed one days' gross wages (the "Employee Wages") in the following amounts: (i) David W. Wallis, President and Chief Executive Officer – $4,807.69; (ii) Michael A. Callen, Chairman – $3,125.00; (iii) David Trick, Senior Managing Director and Chief Financial Officer – $2,307.69; and (iv) Diana Adams, Senior Managing Director – $2,163.46.  In addition, while the vast majority of the Employees' benefits are furnished by AAC or funded by the Employees, certain benefits are paid by the Debtor (the "Benefits").  As a result of the commencement of the Debtor's chapter 11 case, certain third party Benefit providers have discontinued, or have threatened to discontinue, services.

12.     Further, prior to the Commencement Date and in the ordinary course of business, the Debtor reimbursed its Employees and certain AAC employees for expenses that such employees incurred on behalf of and for the benefit of the Debtor (the "Reimbursable Expenses").  Also, certain of the Debtor's and AAC's employees were provided with company credit cards, which are used in the ordinary course of business to pay Reimbursable Expenses.  As a result of the commencement of the Debtor's bankruptcy case, the credit card issuer has ceased extending credit to the Debtor and its affiliates, including AAC.

**Relief Requested**

13.     By this Motion, the Debtor requests entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "Order"), (i) authorizing the Debtor to pay and honor (a) all

---

Debtor, reimburses AAC on a monthly basis (with subsequent quarterly true-ups) for its respective share, if any, of amounts paid by AAC.  Accordingly, in the event that the Critical Vendor's fee cannot be paid via wire transfer by the Debtor directly to such vendor, the Debtor requests authorization to reimburse AAC for any payments made by AAC to the Critical Vendor on the Debtor's behalf.

claims relating to Taxes and Fees (the "Tax Obligations"), (b) all amounts payable to the Critical Vendor in respect of services rendered prepetition (the "Critical Vendor Obligations") and (c) all prepetition claims relating to Employee Wages, Benefits, and Reimbursable Expenses (together, the "Employee Obligations"); and (ii) authorizing and directing financial institutions to honor, process, and pay all fund transfer requests relating to the Tax, Critical Vendor, and Employee Obligations.

## Basis for Relief Requested

### I. Tax Obligations

14. The Payroll Taxes principally represent Employee earnings that governments and judicial authorities have designated for deduction from Employees' paychecks and are considered to be held in trust by the Debtor for turnover to the applicable taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also Begier v. Int'l Rev. Serv.*, 496 U.S. 53, 59 (1990) (holding that withheld FICA taxes are not property of the estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from employee wages created a trust relationship between debtor and city for payment of withheld income taxes). Because the Payroll Taxes are not property of the Debtor's estate, these amounts, and similar trust fund taxes, are not subject to normal bankruptcy prohibitions against payment. *In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998). Failure to pay the Payroll Taxes and other trust fund taxes could result in the Debtor's directors and officers being held personally liable for such taxes. *See*, *e.g.*, *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (holding that officers of a company may be held personally liable for failure to pay trust fund taxes). The Debtor therefore requests that the Court confirm that such trust fund withholding is not property of the Debtor's estate and that the Debtor may transmit the Payroll Taxes and similar trust fund taxes to the proper parties in the ordinary course of business.

15. In addition, claims relating to the Debtor's Tax Obligations are entitled to priority status under section 507(a)(8) of the Bankruptcy Code. This section, in relevant part, provides that claims entitled to priority status include:

> unsecured claims of governmental units … to the extent that such claims are for … (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity … (E) an excise tax on – (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due … after three years before the date of the filing of the petition; or (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition… or (G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

11 U.S.C. § 507(a)(8).

16. Specifically, claims for Payroll Taxes and other trust fund taxes are entitled to priority under section 507(a)(8)(C) of the Bankruptcy Code and claims for state franchise taxes are entitled to priority status under section 507(a)(8)(E) of the Bankruptcy Code. 11 U.S.C. § 507(a)(8)(C), (E); *see also In re Nat'l Steel Corp.*, 321 B.R. 901, 908 (Bankr. N.D. Ill. 2005) (holding that a state franchise tax is an excise tax for Bankruptcy Code purposes); *In re Pemberton Pub, Inc.*, 29 B.R. 519, 520-21 (Bankr. D. Mass. 1983) (same). As priority claims, the Debtor is required to pay its Tax Obligations in full in order to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(C) (requiring payment of all claims of a kind specified in section 507(a)(8) of the Bankruptcy Code before a plan can be confirmed). Accordingly, the relief sought herein would affect only the timing, and not the amount, of the payment of the Debtor's Tax Obligations.

17. In addition, section 363(b) of the Bankruptcy Code provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under this section, a court may authorize a debtor

to pay certain prepetition claims, provided that the debtor has a legitimate business justification. *In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The Debtor submits that a sound business purpose exists under section 363(b) of the Bankruptcy Code for paying the Tax Obligations, as paying such obligations would benefit the Debtor's estate by allowing the Debtor to operate without interruption and by reducing the amount of priority claims which would otherwise be asserted against the Debtor's estate.

18.  The Court may also rely on its general equitable powers to grant such relief. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere*, 98 B.R. at 175-76. Absent such relief, the Debtor's ability to operate in good standing would be jeopardized and the Debtor will likely incur additional interest and penalties, thereby unnecessarily increasing the amount of priority claims against the estate. Moreover, failure to pay trust fund taxes could result in the Debtor's directors and officers being held personally liable for such taxes, thereby forcing such directors and officers to unfairly bear the burden of this case. Thus, granting the relief sought herein will enhance the likelihood of the Debtor successfully reorganizing.

19.  Similar relief has been granted in other large chapter 11 cases in this district. *See*, *e.g.*, *In re Boston Generating, LLC*, Case No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 23, 2010) [Docket No. 171]; *In re Innkeepers USA Trust,* Case No. 10-13800 (SCC) (Bankr. S.D.N.Y. Aug. 12, 2010) [Docket No. 184]; *In re Neff Corp.*, Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 3, 2010) [Docket No. 134]; *In re The Reader's Digest Ass'n, Inc.*, Case No. 09-23529

(RDD) (Bankr. S.D.N.Y. Sept. 17, 2009) [Docket No. 98]; *In re General Motors Corp.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009) [Docket No. 174]; *In re Lyondell Chem. Co.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 23, 2009) [Docket No. 361].

## II. Critical Vendor Obligations

20. Courts generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate under sections 363(b) and 105(a) of the Bankruptcy Code. *See In re Just For Feet, Inc.*, 242 B.R. 821, 824-26 (D. Del. 1999) (a court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors deemed critical to the debtor's reorganization); *In re Columbia Gas Sys. Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (holding that a debtor may pay prepetition claims if doing so is essential to the continued operation of the business); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers).

21. Ample authority exists under section 363(b) of the Bankruptcy Code to pay the Critical Vendor Obligations. As described above, failure to obtain Bankruptcy Court approval to pay the Critical Vendor for services rendered prepetition could result in such vendor's refusal to provide further necessary assistance in connection with obtaining significant tax refunds.

22. Further, the Court may rely on section 105(a) of the Bankruptcy Code to grant the relief sought herein. *See In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a Bankruptcy Court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to permit the greatest likelihood of survival of the debtor"). Application of section 105(a) of the Bankruptcy Code in this context is appropriate because paying the Critical Vendor Obligations will facilitate the successful reorganization of the Debtor.

23. Similar relief has been granted in other large chapter 11 cases in this district. *See*, *e.g.*, *In re Boston Generating, LLC*, Case No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 23, 2010) [Docket No. 172]; *In re Neff Corp.*, Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 3, 2010) [Docket No. 128]; *In re The Reader's Digest Ass'n, Inc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2009) [Docket No. 91]; *In re General Motors Corp.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009) [Docket No. 2533]; *In re Lyondell Chem. Co.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 23, 2009) [Docket No. 360].

### III. Employee Obligations

24. Pursuant to section 507(a)(4) of the Bankruptcy Code, all of the Debtor's Employee Obligations which accrued prepetition are entitled to priority treatment. *See* 11 U.S.C. § 507(a)(4) (providing for priority treatment of employee wage claims up to $11,725.00 for each individual).[2] As priority claims, the Debtor is required to pay these Employee Obligations in full in order to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of all claims of a kind specified in section 507(a)(4) of the Bankruptcy Code before a plan can be confirmed). Accordingly, given that the Order provides that the Debtor may not pay any Employee more than $11,725.00 (a total of $46,900.00 for the Debtor's four Employees) on account of Employee Obligations absent entry of an additional order approving the same, the relief sought herein would affect only the timing, and not the amount, of the payment of the Employee Obligations. In addition, paying the Employee Obligations would reduce the amount of priority claims which would otherwise be asserted against the Debtor's estate.

---

[2] Effective as of April 1, 2010, the amount entitled to priority status under section 507(a)(4) of the Bankruptcy Code increased from $10,950.00 to $11,725.00. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 75 Fed. Reg. 37, 8747-48 (Feb. 25, 2010).

25. The Court may also grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code. Paying the Employee Obligations will benefit the Debtor's estate by maintaining Employee morale. *See Ionosphere*, 98 B.R. at 175 (holding that a prior order authorizing the payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code was appropriate where such payment was needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees, and maintain positive employee morale"). As the Debtor has only four Employees, the Debtor cannot afford the loss of any Employee at this time and there can be no doubt that the Debtor must do its utmost in order to motivate its Employees by paying the Employee Obligations. Moreover, the Debtor's failure to pay the Employee Obligations has imposed a burden on the Debtor's few Employees, who should not have to bear such burden while they work diligently on helping the Debtor to reorganize.

26. Further, the Court may rely on section 105(a) of the Bankruptcy Code to grant the relief sought herein. Application of section 105(a) in this context is appropriate because the relief sought herein will enhance the Debtor's likelihood of successfully reorganizing and maximize the value of the Debtor's estate.

27. Similar relief has been granted in other large chapter 11 cases in this district. *See*, *e.g.*, *In re Boston Generating, LLC*, Case No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 23, 2010) [Docket No. 169]; *In re Innkeepers USA Trust,* Case No. 10-13800 (SCC) (Bankr. S.D.N.Y. Aug. 12, 2010) [Docket No. 183]; *In re Neff Corp.*, Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 3, 2010) [Docket No. 133]; *In re The Reader's Digest Ass'n, Inc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2009) [Docket No. 97]; *In re General Motors Corp.*, Case No.

09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009) [Docket No. 164]; *In re Lyondell Chem. Co.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 23, 2009) [Docket No. 420].

### Notice

28. Notice of this Motion has been provided by facsimile, electronic mail transmission, overnight delivery and/or hand delivery to (i) the U.S. Trustee, (ii) counsel to the Committee, (iii) each member of the Committee or its counsel, (iv) the Securities and Exchange Commission, (v) counsel to the Office of the Commissioner of Insurance of the State of Wisconsin, and (vi) all parties requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtor submits that no other or further notice need be provided.

### No Previous Request

29. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

## **Conclusion**

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, and grant such other and further relief as the Court deems just and proper.

Dated: December 9, 2010
       New York, New York

Respectfully Submitted,

/s/ Allison H. Weiss
Peter A. Ivanick
Allison H. Weiss
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Todd L. Padnos (admitted *pro hac vice*)
DEWEY & LEBOEUF LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303
Tel: (650) 845-7000
Fax: (650) 845-7333

*Proposed Attorneys for the Debtor and Debtor in Possession*

# EXHIBIT A

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
*In re*                                                    :
                                                           :  Chapter 11
AMBAC FINANCIAL GROUP, INC.,                               :
                                                           :  Case No. 10-15973 (SCC)
            Debtor.                                        :
                                                           :
-----------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a), 363(b), 507(a)(4), 507(a)(8), AND 541(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTOR TO PAY (A) TAXES AND RELATED EXPENSES, (B) CERTAIN AMOUNTS PAYABLE TO MJK TAX SERVICES, AND (C) CERTAIN WAGES, BENEFITS, AND REIMBURSABLE EXPENSES, AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED FUND TRANSFER REQUESTS**

Upon the motion (the "Motion")[1] of Ambac Financial Group, Inc. (the "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case, pursuant to sections 105(a), 363(b) 507(a)(4), 507(a)(8), and 541(b) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order (this "Order"): (i) authorizing the Debtor to pay and honor all Tax, Critical Vendor, and Employee Obligations, and (ii) authorizing and directing financial institutions to honor, process, and pay all fund transfer requests relating to the foregoing, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having been provided; and a

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, its creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby:

ORDERED that the Motion is granted in all respects; and it is further

ORDERED that the Debtor is authorized, but not directed, to pay and honor any and all Tax Obligations, without regard to whether such Tax Obligations accrued or arose prior to or after the Commencement Date; and it is further

ORDERED that the Debtor is authorized to continue to allocate and distribute Payroll Taxes and similar trust fund taxes to appropriate taxing authorities in the ordinary course of business; and it is further

ORDERED that the Debtor is authorized, but not directed, to pay and honor any and all Critical Vendor Obligations; and it is further

ORDERED that the Debtor is authorized, but not directed, to pay and honor any and all Employee Obligations; *provided*, *however*, that the Debtor may not pay any Employee more than $11,725.00 on account of Employee Obligations absent entry of an additional order of the Court approving the same; and it is further

ORDERED that the Debtor is authorized, but not directed, to pay and honor any and all administrative and processing fees associated with and all costs and expenses incidental to the payment of the Employee Obligations; and it is further

ORDERED that the financial institutions at which the Debtor maintains accounts relating to the payment of Tax, Critical Vendor, or Employee Obligations are authorized and directed, when the Debtor requests, to honor, process, and pay, to the extent of funds on deposit, any and all fund transfer requests relating to Tax, Critical Vendor, or Employee Obligations; *provided*, *however*, that such financial institutions may rely on the Debtor's representations as to which fund transfer requests relate to the foregoing; and it is further

ORDERED that nothing in this Order shall be deemed to constitute the assumption or rejection of any contract pursuant to section 365 of the Bankruptcy Code and all of the Debtor's rights are reserved; and it is further

ORDERED that the requirements of Rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") are waived, and notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction with respect to all matters related to the interpretation or implementation of this Order.

Dated: _____, 2010
   New York, New York

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE