Stephen J. Fearon, Jr.
Caitlin Duffy
Garry T. Stevens, Jr.
SQUITIERI & FEARON, LLP
32 E 57th St., 12th Floor
New York, New York 10022
Tel:     (212) 421-6492
Fax:     (212) 421-6553

*Attorneys for Karthikeyan V. Veera*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| AMBAC FINANCIAL GROUP, INC., | Case No.: 10-15973 (SCC) |
| Debtor. | |
| KARTHIKEYAN V. VEERA, | |
| Plaintiff, | District Court Case No.: |
| v. | 1:10-CV-4191 (HB)(S.D.N.Y.) |
| AMBAC PLAN ADMINISTRATIVE COMMITTEE, *et al*., | |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF KARTHIKEYAN V. VEERA'S MOTION
SEEKING A DECLARATION THAT THE AUTOMATIC STAY DOES NOT APPLY
TO VEERA'S SUBPOENA TO AMBAC OR, IN THE ALTERNATIVE,
<u>AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY</u>**

TO THE HONORABLE SHELLY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Karthikeyan Veera, as movant, by and through his undersigned counsel, hereby submits

this reply ("Reply") to Ambac Financial Group, Inc.'s ("Debtor," "Ambac," or "Company")

objection [Docket No. 114] ("Objection") – and consequently to the Joinder by the Official Committee of Unsecured Creditors  [Docket No. 115] – to Mr. Veera's January 5, 2011 motion seeking declaratory relief or alternatively, relief from the automatic stay [Docket No. 107] ("Motion").  In further support of his motion, Mr. Veera represents:

## INTRODUCTION[1]

1.      This Motion concerns the Southern District of New York case, *Veera v. Ambac Plan Administrative Committee et al.*, 10-CV-4191, ("Class Action") filed on March 24, 2010 against the  fiduciaries ("Non-debtor Defendants") of the Ambac Savings Investment Plan ("Plan").  On September 7, 2010, relying upon representations made by Ambac's counsel that Ambac had completely abdicated all Plan-related responsibility and liability under ERISA to various separate legal entities, Mr. Veera dropped his claims against Ambac and filed an Amended Complaint alleging claims against the fiduciaries of the Plan for violating their duties under the Employee Retirement Income Security Act of 1974 ("ERISA").  On October 20, 2010, the Non-debtor Defendants moved to dismiss the Amended Complaint and the District Court recently denied that motion.

2.      The parties to the Class Action are subject to a  Sscheduling Order  by Judge Baer that sets June 30, 2011 as the closing date for all non-expert discovery.  In that vein, Plaintiff has diligently sought discovery served his first request for production of documents on the Class Action defendants on July 30, 2010.[2]

3.      In the months following Plaintiff's July 30 request, defendants failed to produce any merits-related discovery to Mr. Veera in spite of the time constraints imposed by Judge Baer

---

[1]      Capitalized terms used but not defined in the Reply have the meanings set forth in the Opening Brief.

[2]      On July 30, 2010, Ambac was still a party to the Class Action.

and their legal obligation to do so.  The Non-debtor Defendants represented to Mr. Veera that,

because most of them were no longer employed by Ambac, Plaintiff would have to seek most of

the discovery through a non-party subpoena to the Company.  Nevertheless, the Non-debtor

Defendants continued to delay producing responsive documents and consistently failed to follow

through on any agreements to produce discovery.  It is clear in hindsight that the Non-debtor

Defendants were biding their time until Ambac filed its bankruptcy petition on November 8,

2010 – more than two months after the filing of the Amended Complaint and more than three

months after  Mr. Veera served his request for documents.

        4.       Non-debtor Defendants never filed a notice of bankruptcy with Judge Baer or

informed him in any way of Ambac's bankruptcy.[3]  On December 7, 2010, the Non-debtor

Defendants attended a hearing on their  motion to dismiss, and at no point called the Court's

attention to Debtor's bankruptcy petition.  They never told the District Court that the Class

Action threatened Ambac's reorganization efforts or that they could not comply with the

deadlines in the Scheduling Order because of the bankruptcy proceedings.  Mr. Veera and the

Non-debtor Defendants continued to negotiate for the exchange of documents throughout

November and December.  Even on December 29, 2010, when counsel for the Non-debtor

Defendants informed Mr. Veera that the "vast majority" of discovery he sought was in the

possession or control of the Company, the Non-debtor Defendants represented that they were

continuing to gather all other documents and pledged to deliver them "as soon as

administratively possible."  *See* December 29 Email attached as Exhibit C to Mr. Fearon's

Declaration filed with the Opening Brief.

---

[3]      This, in spite of several verbal and written representations to Mr. Veera's counsel that the Non-Debtors intended to file a notice with Judge Baer. *See* November 17, 2010 Email from Jamie Kohen ("Kohen Email"), attached as Exhibit A  to the Declaration of Stephen Fearon filed in Further Support of Mr. Veera's Motion ("Fearon Decl.").

5. On January 6, 2011, Judge Baer denied the Non-debtor Defendants' motion to dismiss the Class Action, allowing Mr. Veera to pursue his claims against the fiduciaries of the Plan with only six months left to complete discovery.

6. To streamline the discovery process and avoid unnecessary delay Mr. Veera filed this Motion seeking to obtain a declaration from this Court that the automatic stay does not prevent him from serving his proposed subpoena on Ambac, or alternatively, seeking relief from the automatic stay for the limited purpose of allowing Mr. Veera to serve his subpoena on Ambac.

7. In its Objection to the Motion, Debtor[4] seeks to establish a rule that is unsupported by law in this district, which would completely bar non-party discovery of a debtor. Moreover, Debtor inappropriately makes a dry run through what appears to be a draft of its soon-to-be-filed adversary proceeding, claiming that the automatic stay should be extended to Mr. Veera's entire prosecution against the Non-debtor Defendants, many of whom are no longer employed by Ambac or play any role in Ambac's reorganization. Debtor is wrong on both counts.

8. Insofar as the scope of Mr. Veera's subpoena is concerned, if Debtor believes the subpoena is over-broad, the appropriate remedy is for the parties to negotiate to narrow it. That is why Mr. Veera included a draft of it with his motion. Debtor's assertion that Mr. Veera has exhibited no willingness to negotiate an unobtrusive subpoena is contrary to the months of ongoing discussions with the Class Action counsel. In fact, in consideration of Debtor's Objections, Mr. Veera has significantly pared down his proposed subpoena and is willing to

---

[4] And by means of joinder, the Official Committee of Unsecured Creditors.

negotiate in good faith to further reduce any burden on the Debtor.[5]  However, whether Mr. Veera's subpoena is reasonable should be considered in light of what  Mr. Veera reasonably needs to properly prosecute his Class Action and does not depend solely on  Debtor's restrictive interpretation of  ERISA or Defendants' overall unwillingness to produce responsive documents.

9.     The Court should reject  Debtor's attempt to extend the bankruptcy stay in a way that is unsupported by the law.  That portion of Debtor's Objection is simply an attempt by the Debtor and the Defendants in the Class Action to deprive Mr. Veera of the discovery he needs to properly pursue the ERISA claims for himself and the more than 400 other participants in the Class who lost a significant portion of their retirement savings because of the breaches of duty by Defendants.

## ARGUMENT

## I.     MR. VEERA'S SUBPOENA IS NOT SUBJECT TO THE AUTOMATIC STAY BY VIRTUE OF AMBAC'S PETITION

10.    Mr. Veera and his counsel believe that they could have simply served a subpoena on Ambac without first bringing this motion.  However, based upon the discussions that they had with Defendants' counsel in the Class Action, it was inevitable that Defendants (and Ambac) would resist that subpoena before this Court.  Moreover, because Ambac had not produced any documents to Plaintiff in the Class Action, the Defendants in the Class Action were resisting Plaintiff's efforts to schedule depositions and the limited time for discovery in the Class Action was running.   Every day of delay helped Defendants and hurt Plaintiff and the Class.

11.    As a result, it seemed more efficient to quickly resolve, by means of Mr. Veera's Motion, whether Plaintiff may serve a subpoena on Ambac.  Otherwise, Plaintiff would have

---

[5]      A copy of the Second Proposed Subpoena is attached to the Fearon Decl. as Exhibit B and a red-lined version detailing Plaintiff's changes is attached as Exhibit C.

served the subpoena, waited for Ambac's response, then had to pursue enforcement and brief a motion to compel compliance, significantly delaying Plaintiff's ability to complete discovery in the Class Action before Judge Baer's deadline.

12.     Ambac's suggestion that third-party subpoenas against the Debtor are subject to the automatic stay lacks any support in law.  As one court noted, the idea "that no debtor that has filed for protection under the bankruptcy laws is subject to any discovery in a civil action absent a lifting of the automatic stay by the bankruptcy court would be a surprising result, for if correct the bankruptcy court would likely be inundated with motions to lift the automatic stay for every discovery request, even if unrelated to any action against the debtor." *Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, No. 04-CV-0767, 2004 WL 2973822 at *2 (N.D. Ill. Nov. 30, 2004).

13.     Debtor is not a party to Plaintiff's action, and Plaintiff was free – and in fact invited by Defendants  – to serve his subpoena on Ambac as a third party.  Given  the verbal and written representations of the Non-debtor Defendants' counsel, it was clear that any such subpoena would have led Ambac to seek the protections of the automatic stay as a means of further delaying the Class Action.  Therefore, rather than issue a subpoena and wait thirty days for a response, only to then be served with an adversary proceeding or other attempts to delay his discovery, Mr. Veera sought declaratory relief to prevent the Debtor from further delaying his recovery on behalf of the Class.

14.     Regardless of the order with which the parties here arrived before this Court, the Debtor has the heavy burden of establishing that the subpoena is subject to an extension of the automatic stay.  The Debtor cannot meet that heavy burden.

15.     Debtor attacks the scope of Plaintiff's proposed subpoena, claiming that any

discovery requested must "(i) be narrowly tailored so as to minimize the distracting effect upon the Debtor; (ii) not pertain to claims against the debtor or its property; and (iii) not adversely effect the debtor's ability to reorganize." Debtor's Br. ¶ 17.

16.     As a practical matter, it is important to note that every case but one relied upon by Debtor permitted third-party discovery against the debtors. Moreover, in those cases where limitations were set at all, the standard was not one of "narrowness," but one of "reasonableness" – those items "urgently needed" in order to pursue an action against non-debtors. *See In re John-Manville Corp*, 41 B.R. 926, 932 (S.D.N.Y. 1984) ("What a defendant in [defendant's] situation urgently needs for its defense should be made available to it"); *In re Hillsborough Holding Corp.*, 130 B.R. at 607 (permitting "reasonable discovery" of a debtor co-defendant to be utilized solely against non-debtor defendants).

17.     Debtor claims that the cases relied on by Mr. Veera "represent merely the tip of the iceberg" (Debtor's Br. ¶ 21) but only cites two additional cases – representing perhaps the other smaller tip of the iceberg – only one of which denies a party the opportunity to obtain third-party discovery from the debtor.[6] The second case, *Peter Rosenbaum Photography Corp*, 2004 WL 2973822, supports Mr. Veera's position that discovery is permissible under the Bankruptcy Code. There the court allowed discovery against the non-party debtor to move forward, noting that discovery would be appropriate "even if [debtor] was a defendant" in the action, provided that the claims were directed against non-debtor co-defendants. *Id*. At *3. Here, like in *Peter Rosenbaum Photography Corp.*, Debtor is *not* a co-defendant, and is therefore bound to produce

---

[6]     That decision, *In re Philadelphia Newspaper LLC*, 423 B.R. 98, 105 (E.D.Pa. 2010), denied the Appellant the opportunity to obtain discovery from the debtor on the grounds that the information obtained would be used against defendants whom the debtor was bound to indemnify. As discussed in detail above, the potential for indemnification is not grounds for extending the automatic stay to third-party actions in this district. *See DeSouza*, 2006 WL 2168478 at *2. Debtor hits the same wall when "distinguishing" *In re Miller*, 262 B.R. 499 (9th Cir. B.A.P. 2001). Debtor's Br., 18 n.7.

discovery in response to Mr. Veera's subpoena.

18.     Debtor's insincere characterization of Mr. Veera's subpoena as taking a

"'shotgun' approach to discovery" demonstrates either a lack of understanding of the ERISA

causes of action or an intentional effort to mislead this Court as to the merits of Mr. Veera's

complaint.  As for which party has "evidenced no willingness to negotiate a reasonable,

unobtrusive, and limited set of requests directed toward relevant disputed issues in the ERISA

Action," the documents speak for themselves.  Mr. Veera is more than willing to sit down with

Debtor's counsel and negotiate in good faith in order to trim down his proposed subpoena, and in

fact has done so for the purposes of moving this process along.  The fact remains, however, that

*many* of the documents requested by Mr. Veera are necessary to the prosecution of his action,

Debtor's characterization of ERISA notwithstanding.

**A.     Temporal Scope**

19.     Debtor attacks the scope of Plaintiff's proposed subpoena on many fronts, the first

of which is the "temporal scope" for which Mr. Veera seeks documents.  Debtor claims that a

"discovery stipulation" signed by the parties to the Class Action limits Plaintiff's request for

documents for a time period ending on July 2, 2008.  Debtor is wrong because Plaintiff is free to

seek discovery for any time period that is relevant to the claims or defenses in the Class Action.

20.     The discovery stipulation on which Debtor relies in an attempt to limit the scope

of the discovery is the "Stipulation Regarding Protocol for Production of Documents and

Electronically Stored Information" (ESI Protocol), and states in relevant part:

> [T]he relevant time frame for ESI discovery [is] April 25, 2006 through
> April 23, 2009. This time frame would start the ESI period six months
> before the beginning of the Class Period and would end it on the last day
> of the Class Period. . . . **Because the parties are at the initial stage of
> this litigation . . . either side [is] able to request the other party to
> preserve ESI beyond this timeframe upon a good faith need or upon**

> **agreement of the parties. There is no need to delay setting the ESI time frame because discovery is proceeding now in this Action.**

ESI Protocol, 2-3 (attached to the Fearon Decl. as Exhibit D) (emphasis added).[7]

21.     Based on the actual stipulation, not the select quote in Debtor's brief, it is clear that Plaintiff's proposed  subpoena to Ambac – now a non-party to the Class Action – is not constrained by the dates set forth in the ESI Protocol.

## B.     Breadth of Subpoena

22.     Debtor next attacks Mr. Veera's subpoena under the hyperbolic declaration that the subpoena "essentially amount[s] to a request for '*all documents*.'"  Debtor's Br. ¶ 24 (emphasis supplied).  In spite of Debtor's melodramatic tone, Mr. Veera has considered Debtor's objections and has revised his proposed subpoena to eliminate many of the requests to which the Debtor objected and has attached his changes as Exhibits B and C to the Fearon Decl.[8]

23.     As for Debtor's suggestion that Mr. Veera is not entitled to documents relating to the stock price to the extent such requests do not relate to the Plan or oversight of the Committees, Debtor is again exhibiting a fundamental misunderstanding of Mr. Veera's  claims and ERISA law.  Judge Baer recently outlined the following relevant allegations in his decision denying the Non-debtor Defendants' motion to dismiss:

> In this case the plaintiff points to a number of facts it claims substantiate its claim that continuing to offer Ambac stock was imprudent. Specifically, it is alleged that throughout the Class Period, Ambac was exposed to billions of dollars of losses on high-risk transactions and had significantly loosened and lowered its underwriting standards. Compl. ¶ 7. Throughout 2006, Ambac's exposure and reliance on revenues from

---

[7]     The ESI Protocol was endorsed by Judge Baer on August 9, 2010, when Ambac was still party to the Class Action and the proposed class period ended on April 23, 2009.

[8]     Plaintiff concedes that he is not entitled to any documents covered under the statutory confidentiality requirements of Wis. Stat. § 601.42, but maintains that not everything related to OCI's investigation – in particularly documents and communications requested by OCI that would not otherwise be subject to privilege – are encompassed by the relevant statute.  Mr. Veera has not been made privy to the letter referred to by Debtor in ¶27 of its objection, written by OCI and specifically listing the documents not eligible for production.

structured finance products such as RMBSs and CDOs grew while the less risky public finance business accounted for a smaller and smaller percentage of the Company's revenues. *Id.* ¶ 188. On October 10, 2007, Ambac estimated that it had an unrealized loss of $743 million on its credit derivative portfolio, *id.* ¶ 195, and this announcement precipitated a drastic drop in share price. *Id.* ¶ 199. Two weeks later it announced a third quarter net loss of $360.6 million, attributing the loss to the credit derivative exposures announced on October 10, 2007. *Id.* ¶ 200. Ambac stock, which had closed as high as $96.08 during the Class Period, fell to approximately $25 per share following the October announcements. *Id.* ¶¶ 199-201. The price of Ambac stock fell from a Class Period high of $96.08 to $1.05 by the end of the Class Period,2 and is now trading at around $.60 a share. *Id.* at ¶ 8. On January 18, 2008 Fitch downgraded Ambac's credit ratings, making Ambac the first bond insurer to lose its "AAA" rating. *Id.* ¶ 206.

On January 16, 2008, yet another announcement disclosed a $5.4 billion loss on Ambac's CDO portfolio for the fourth quarter of 2007, along with other losses which come to some $32.82 per share for the fourth quarter of 2007. *Id.* ¶ 203. On April 23, 2008, Ambac announced a $1.6 billion loss for the first quarter of 2008, a $1.7 billion los on its CDO exposures, and a credit-impairment charge of $1 billion. *Id.* ¶ 111. Defendant Leonard, a senior vice president and Chief Financial Officer at Ambac during the Class Period, announced that "on some exposures . . . losses could reach as high possibly as 80%." *Id.* ¶ 112. By July 2, 2008, the last day of the Class Period, Ambac stock had declined to $1.05 and trading was temporarily halted. *Id.* ¶ 214.

Ambac had improperly bolstered its reported financial results by overstating the value of its business and failing to properly mark-to-market Ambac's portfolio of high-risk securities. *Id.* ¶ 7. This lead to the Plan participants' purchase of Ambac stock at an inflated price. *Id.* ¶ 190- 93. In January 2008, Ambac had been notified that Massachusetts regulators were investigating whether Ambac failed to disclose its guarantees of troubled structured finance investments to issuers of municipal bonds in the state. *Id.* ¶ 209. Around that time, the Wisconsin Office of the Commissioner of Insurance also began an investigation into Ambac Assurance in an effort to protect Ambac investors from dire loss. *Id.* ¶ 210.

These factual allegations suffice to show that Plaintiffs have "raise [d their] right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555).

*Veera v. Ambac Plan Administrative Committee et al.*, 10-CV-4191 2011 WL 43534 at *5-6 (S.D.N.Y. Jan 6, 2011).

24. In ERISA, as properly understood by Judge Baer, the relevant considerations are not limited to "what the defendants knew and when they knew it" (Debtor's Br. ¶ 24), but rather what information they had at their disposal and whether or not that information would have been enough to lead a reasonable personal in like circumstances to limit the Plan's investment in company stock, or, at the very least, to investigate the prudence of continued investment in Ambac securities.

**C. The Cost of Debtor's Compliance with Mr. Veera's Subpoena Can Be Managed Through Good Faith Negotiations Between The Parties**

25. Mr. Veera appreciates the financial burden of producing discovery. However, may of the documents requested should be easily obtained, as they are the same documents requested in the now-settled Securities class action (No. 08-CV-411) and by the various state and federal bodies investigating Ambac's conduct during the same time frame. There is no added burden in simply producing an extra copy to Mr. Veera. Those documents that have not already been culled should not be so difficult to obtain as Ambac suggests.

26. Moreover, the reality of costs in discovery is a universal one and no doubt came into play in the litany of cases wherein parties were permitted to pursue third-party discovery against a debtor. Cost in and of itself is of no matter unless the Debtor can establish that it "will suffer irreparable injury unless the injunction issues; that the threatened injury outweighs any damage the proposed injunction will cause to the opposing party; and that the injunction, if issued, would not be adverse to the public interest." *In re Hillsborough Corp.,* 130 B.R. at 606 (citing Shatel Corp. v. Mao Ta Lumber & Yacht Corp., 697 F.2d 1352 (11th Cir.1983); s*ee also, Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,* 140 B.R. 969, 972 (holding that the what the Debtor "drafted for the bankruptcy judge contains formulaic and

unreasoned recitations of irreparable harm" and noting that "the expense of litigation is not irreparable injury") (citing *Petroleum Exploration, Inc. v. Public Service Commission,* 304 U.S. 209, 222 (1938); *FTC v. Standard Oil Co.,* 449 U.S. 232, 244 (1980); *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)). Debtor fails to measure up to any three of the relevant considerations.

27. The fact is that Mr. Veera is entitled to certain documents, and absent an actual showing that the cost will actually threaten the successful reorganization of Ambac, the Court should grant Mr. Veera's motion.

## II. EVEN IF MR. VEERA'S SUBPOENA IS COVERED UNDER THE PROVISIONS OF THE AUTOMATIC STAY, HE IS ENTITLED TO RELIEF UNDER § 362(d)(1) OF THE BANKRUPTCY CODE

28. Assuming Mr. Veera's subpoena is subject to the automatic stay, which it is not, the Court should lift the stay becasue doing so is warranted under the twelve factors used by courts in this circuit when faced with similar motions. *See Sonnax Indus. Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280 (2d Cir.1990).

29. In ¶¶ 13-15 of his Motion, Mr. Veera laid out his analyzed of the proposed subpoena in light of what he considered to be the relevant factors. Mr. Veera now responds to Debtor's analysis:

- Factors 1 and 11: Whether Relief Would Result in a Resolution of the Issues and Whether the Parties are Ready for Trial: Debtor erroneously argues that this case is in its infancy and that discovery is just getting started in the Class Action. Contrary to Debtor's baseless assertions, discovery has been ongoing since July of 2010 – more than three months prior to Debtor's bankruptcy petition. The Non-debtor Defendants have simply been stonewalling Plaintiff's requests for merit-based discovery. The fact that discovery will close on June 30, 2011 by virtue of Judge Baer's scheduling order puts it past the half-way mark and the complex Action is calendared for trial in merely 12 months.

More to the point, however, is that there is no action pending between Mr. Veera and the Debtor, and the only issue that needs resolving is whether or not Plaintiff is entitled to third-party discovery from the Company. Accordingly, Mr. Veera did not consider factors 1 or 11 in his Motion, and the Court should likewise treat them as irrelevant.

- Factor 2: Lack of any Connection or Interference with the Bankruptcy Case: Debtor makes two separate points here, the first being that lifting the stay will distract Ambac's employees from the Debtor's reorganization efforts and potentially cause the estate to incur costs. As discussed above, costs alone are not a bar to the production of third-party discovery. Insofar as any time commitments required of Ambac employees, Mr. Veera is more than willing to postpone any deposition of current officers and directors of Ambac for as long as practicable and to work with the witnesses to minimize disruption. Debtor is more than capable of delegating the remaining production responsibilities to avoid unnecessary interruption of the reorganization process.

    The second argument Debtor makes is pure conjecture, suggesting that by lifting the stay in this situation, numerous motions will follow from other parties seeking relief from the stay. As Debtor is no doubt aware, §361(d) motions are decided on a case-by-case basis, and creditors are free to move for relief from the stay regardless of the outcome of this motion. Moreover, since Debtor recently settled six related securities actions for $27.1 million on December 16, 2010, Plaintiff is unaware of any other prepetition class actions alleging similar breaches of duty against Non-debtors where the outcome of this Motion might be considered relevant.

- Factor 5: Whether the Debtor's Insurer has Assumed Full Responsibility for Insuring It: Debtor maintains (and Mr. Veera believes) that insurance only covers the Class Action claims for up to $5,000,000. Accordingly, Debtor suggests that Ambac will be responsible for the balance of any judgment above $5,000,000. Again, however, Mr. Veera is not suing Ambac, but rather Non-debtor individuals and committee members. As any finding of liability would logically foreclose indemnification from Ambac, any costs extending beyond the $5,000,000 coverage are the non-debtor defendants' to bear. As for the actual costs of production, as examined above, cost of discovery alone is no justification for extending the automatic stay.

- Factor 6: Whether the ERISA Action Primarily Involves Third Parties: The ERISA Action *only* involves third parties. Ambac is not a party to the Class Action.

- Factor 10: Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation: This factor favors allowing the subpoena because doing so will allow Plaintiff and the class to comply with the Court-imposed discovery deadlines and trial schedule.

  Debtor suggests that any judgment against the Non-debtors will be unrecoverable. This, of course, is nonsense, and not actually related in any way to judicial economy.

30. Finally, as to the twelfth *Sonnax* factor – the impact of the stay on both parties and the balance of harms – Debtor claims the costs associated with third-party discovery outweigh the harm that will be delivered upon the hundreds of class members who have suffered a tragic loss to their retirement savings at the hands of the Non-debtor Defendants. An analysis of the facts clearly indicates otherwise. Moreover, Mr. Veera has expressed a willingness to negotiate and limit costs to the Debtor as much as possible while still obtaining documents and testimony necessary to properly prosecute the Class Action. There is no doubt that Ambac will have to search through documents and that there will be associated costs. But those costs will be neglegible compared to the tens of millions of dollars in losses suffered by the Plan and its participants. A true balance of potential harms to parties weighs strongly in Plaintiff's favor.

## III. DEBTOR IS NOT ENTITLED TO AN EXTENSION OF THE AUTOMATIC STAY TO INCLUDE THE CLASS ACTION

In response to Mr. Veera's Motion, Debtor has threatened to file an adversary proceeding seeking to extend the automatic stay against the Class Action. Defendant has set forth the crux of its position in its Objection, and Mr. Veera responds accordingly.

### A. Debtor Bears The Burden Of Establishing That Ambac's Recovery Would Be Jeopardized By The Continued Prosecution Of The Class Action

31. When seeking to extend the automatic stay to actions against third-party non-debtors, the Debtor bears the burden of demonstrating that an extension of the stay is warranted based upon unusual circumstances. *DeSouza v. Plusfunds Group, Inc.*, No 05-cv-5990, 2006

WL 2168478 at *2 (S.D.N.Y. 2006). *See also CAE Industries Ltd. v. Aerospace Holdings Co.* 11

B.R. 31, 34 (S.D.N.Y. 1990) ("In the absence of evidence which demonstrates any impact upon

the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant."); *In re*

*Hillsborough Holding Corp.*, 130 B.R. 603, 606 (M.D.Fla. 1991) ("it is clearly the burden of the

debtor to establish the traditionally accepted principles which govern the issuance of injunctive

relief that is, a substantial likelihood that the movant will prevail on the merits; that the movant

will suffer irreparable injury unless the injunction issues; that the threatened injury outweighs

any damage the proposed injunction will cause to the opposing party; and that the injunction, if

issued, would not be adverse to the public interest.") (citing Shatel Corp. v. Mao Ta Lumber &

Yacht Corp., 697 F.2d 1352 (11th Cir.1983); *In re Related Asbestos Cases*, 23 B.R. 523,

(N.D.Cal. 1982)("something more than the mere fact that one of the parties to this lawsuit has

filed a Chapter 11 bankruptcy petition must be shown in order that proceedings be stayed against

non-bankrupt parties").

## B.    The Class Action Is Not Subject To Automatic Stay Provisions Of The Bankruptcy Code

32.     There is no merit to Debtor's assertion that Ambac's bankruptcy entitles non-

debtor defendants to stay the ERISA proceedings.  Courts in this district have time and again

allowed claims to proceed against the non-debtor defendants, including a bankrupt corporation's

current and former officers and directors.  *Teachers Insurance & Annuity Association v. Butler,*

803 F.2d 61, 65 (2d Cir. 1986) (stay pursuant to § 362(a) was limited to debtor partnership and

did "not encompass non-bankrupt co-defendants" who were individual partners); 3 Collier on

Bankruptcy § 362.03(3)(d) (15th ed. 2002).  S*ee, also, Demel v. Group Benefits Plan For*

*Employees of Northern Telecom, Inc.,* No. 07 CV 00189, 2010 WL 167947 (S.D.N.Y. Jan. 8,

2010) (finding that individual defendants are not entitled to an automatic stay where bankrupt

company was not named as a defendant and there was no indication that ERISA lawsuit would interfere with bankruptcy proceedings); *Trustees of Sickness and Accident Fund of Local One-L v. Philips Winson, Inc.,* No. 00 Civ. 9554, 2005 WL 273017 at *2 (S.D.N.Y. Feb. 3, 2005) (automatic stay does not extend to controlling shareholder of bankrupt company); *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439 (S.D.N.Y. 2004) (declining to extend automatic stay under Section 362(a) to individual non-debtor owner of debtor company); *Fonda Group, Inc. v. Lewison*, 133 F. Supp. 2d 350 (D. Vt. 2001) (declining to apply automatic stay to individual chief executive officer of bankrupt company); *Gray v. Hirsch,* 230 B.R. 239, 242 (S.D.N.Y. 1999) (declining to extend bankruptcy stay to debtor company's principal and controlling shareholder); *In re First Cent. Financial Corp.*, 238 B.R. 9, 18 (E.D.N.Y. 1999) ("lawsuits instituted against officers and directors of a corporate debtor are usually not stayed" because "only a debtor is included within the protective umbrella afforded by the automatic stay that arises pursuant to § 362(a)(1).").

      *i.*     *Claims Against the Plan Committees*

    33.    Debtor first argues, without the support of any law whatsoever, that because the Compensation, Investment and Administrative Committees (the "Committees") lack independent legal status or assets apart from the Debtor, that by suing the Committees, Mr. Veera is in essence maintaining an action against the Debtor. Debtor suggests that without independent assets, Ambac would be responsible for paying any judgment entered against the Committees. The Committees, however, are each comprised of individual human members, all with separate legal identities and assets, and all are liable as fiduciaries to the Plan under ERISA. In fact, each Committee member who exercised discretionary authority through his or her committee membership throughout the proposed Class Period is individually named in the Amended

Complaint. Plaintiff is seeking a judgment against each individual committee member and any judgment against the Committees would be tantamount to a judgment against their members – similar to any unincorporated association.[9]

34. Moreover, courts do not typically extend the automatic stay to ERISA actions against committees. *See, e.g., Standard v. Foamex, L.P.*, No. 07-cv-4225, 2009 WL 1033607 (E.D.Pa. Apr. 15, 2009) (holding that ERISA action against non-debtor committees and individual board members was not subject to automatic stay).

35. Debtor also contends that, even if the Committees were considered separate legal entities, Ambac would be responsible for indemnifying Defendants for any judgment against them. Debtor points out that, while the automatic stay generally does not apply to proceedings against non-debtors, "an action taken against a non-debtor which would inevitably have an adverse impact upon the property of the estate must be barred by the automatic stay." *In re Gucci,* 126 F.3d 380, 392 (2d Cir.1997). This extension of a § 362 stay to a non-debtor may arise "when there is such identity between the debtor and the non-debtor that the debtor may be said to be the real party defendant and that a judgment against the non-debtor will in effect be a judgment against the debtor." *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986).

36. Debtor argues here that Ambac and the Committees share such an identity of interest, but fails to meet its burden because it completely neglects to explain how or what that interest is.

*ii.    Claims Against the Individual Defendants*

37. Debtor next cites to *DeSouza*, in support of the proposition that the "automatic

---

[9]      The District Court opinion holds the 29 U.S.C. § 1002(9) definition for "persons" under ERISA "is broad and defines person loosely to include such informal entities as an "unincorporated organization, association, or employee organization."

stay applies to non-debtors 'when the debtor and non-debtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law.'" 2006 WL 2168478 at *2 (quoting *Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 608 (S.D.N.Y. 1996)). In *DeSouza*, however, the district court refused to extend the automatic stay to the two non-debtor co-defendants sued for actions taken in their roles as directors of the debtor corporation. Noting that "courts will generally not extend the automatic stay of proceedings pursuant to § 362(a)(1) to non-debtor co-defendants" barring "unusual circumstances," the court held that the non-debtors failed to meet their burden establishing that a failure to extend the stay would pose "a serious threat to the debtors' reorganization efforts." *Id.* (citations omitted). Here, Debtor similarly fails to meet its burden.

38.     Similarly, in *Variable-Parameter Fixture Development Corp.*, the Court also refused to extend the stay, noting that "The *Robins* court . . . specifically excluded from the 'unusual situation' exception those cases in which the non-bankrupt co-defendant is 'independently liable' to the creditor. Therefore, where the debtor and non-debtor co-defendant 'are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty,' a stay clearly cannot be extended to the non-debtor." 945 F. Supp. At 608 (citing *Robins,* 788 F.2d at 999).

39.     Specifically, Debtor argues that all claims against the Individual Defendants in the Class Action should be stayed because of the Debtor's potential obligation to indemnify the Individual Defendants by operation of Delaware law and Ambac's Articles of Incorporation and By-Laws. A non-debtor in the *DeSouza* action – a director of the debtor company - made a similar argument. 2006 WL 2168478 at *3. There, the Southern District noted that "Delaware's corporate law requires that a director's actions be in "good faith" and that the director

"reasonably believe" that those actions are in the "best interests" of the company as a prerequisite for indemnification. *Id.* The *DeSouza* court found that "'A stay clearly cannot be extended to the non-debtor' under the unusual-circumstances test 'where the … non-debtor's liability rests upon his own breach of duty.'" (quoting *Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.,* 945 F. Supp. 603, 608-09 (S.D.N.Y. 1996)).

40.     In a set of facts identical to those in *DeSouza*, Debtor claims that Ambac will only have to indemnify the Non-debtor Defendants if, after Mr. Veera obtains a judgment in the Class Action, the Board of Directors determines that they were acting in a manner reasonably believed to be in the best interest of the Savings Plan participants. Because any judgment against the Defendants will require exactly the opposite determination – that the Non-debtor Defendants were not acting in the best interest of the Plan or its participants – there seems to be little likelihood that Debtor will be liable for the judgments against the Non-debtor Defendants.[10]

### iii.     Claims Against the Current Officers and Directors

41.     Finally, Debtor argues that the protections of the automatic stay should be extended to the current officers and directors of Ambac – of which there are only five currently party to the Class Action – because their services are critical to the Debtor's reorganization. Again, we are asked simply to take the Debtor's word for it.

42.     "Vague indications of potential distraction, and limited participation in and discussions concerning reorganization, do not represent 'danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize.'" *DeSouza*, 2006 WL 2168478 at *2 (denying non-debtor's request to extend the automatic stay to his action because he "provided no support whatsoever" detailing his roll in the reorganization).

---

[10]     The Board of Directors could always vote in opposition to the verdict and find otherwise, but such an act would defy logic.

43.     Insofar as the scope of the subpoena and the time commitments required to respond are concerned, again, Mr. Veera is willing to negotiate in good faith with the Debtor to limit the toll any search would have on the current officers and directors and the Company's resources.  However, contrary to Debtor's understanding of the surviving claims of Mr. Veera's ERISA action, the scope of the subpoena cannot and will not be limited to the issues designated as relevant by Debtor's counsel or  counsel for the Defendants in  the Class Action.  Mr. Veera has alleged that the Non-debtor's knew or should have known that Ambac's stock was in dire jeopardy of collapsing as a result of Ambac's exposure to defaults in its high-risk CDO and RMBS portfolio.  The issues are not limited to what actions they took to protect the plan – the issue is rather that they took no action when they should have based on what they knew or should have known.

## CONCLUSION

Mr. Veera respectfully requests that the Court grant his Motion in accordance with the overwhelming majority of case law, declaring that that the automatic stay does not apply to his subpoena to Ambac, or alternatively that the Court grant him relief from the automatic stay for cause based on the analysis above.

Dated: January 18, 2011
New York, New York

Respectfully Submitted,

SQUITIERI & FEARON, LLP

/s/ Stephen J. Fearon, Jr.
Stephen J. Fearon, Jr.
Caitlin Duffy
Garry T. Stevens, Jr.
32 E. 57th St., 12th Floor
New York, New York
Tel:     (212) 421-6492
Fax:     (212) 421-6553
stephen@sfclasslaw.com
caitlin@sfclasslaw.com
garry@sfclasslaw.com

*Attorneys for Karthikeyan V. Veera*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 18, 2011, I caused copies of the foregoing Reply Brief In Support Of Karthikeyan V. Veera's Motion Seeking A Declaration That The Automatic Stay Does Not Apply To Veera's Subpoena To Ambac Or, In The Alternative, An Order Granting Relief From The Automatic Stay to be served via the Court's Electronic Filing System and also via first class mail, postage prepaid, upon the parties listed on the attached matrix.


Dated: January 18, 2011            <u>/s/ Stephen J. Fearon, Jr.</u>
        New York, New York            Stephen J. Fearon, Jr.

**DEWEY & LEBOEUF LLP**
PETER A. IVANICK, MARTIN
BIENENSTOCK, ALLISON H. WEISS &
TODD L. PADNOS
1301 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6092

**KURTZMAN CARSON
CONSULTANTS**
TRAVIS VANDELL
2335 ALASKA AVE
EL SEGUNDO, CA 90245

**ALGORITHMICS US INC**
ATTN MARK WEINSTOCK
ONE STATE ST PLZ
NEW YORK, NY 10004

**ASSISTANT UNITED STATES
ATTORNEY SOUTHERN DISTRICT
OF NEW YORK**
DANIEL FILOR
86 CHAMBERS ST 3RD FL
NEW YORK, NY 10007

**ASSISTANT UNITED STATES
ATTORNEY SOUTHERN DISTRICT
OF NEW YORK**
ELLEN LONDON
86 CHAMBERS ST 3RD FL
NEW YORK, NY 10007

**BANK OF NEW YORK MELLON**
EILEEN MURPHY MANAGING
DIRECTOR
ONE WALL STREET
NEW YORK, NY 10286

**BANK OF NEW YORK MELLON**
GEOFFREY BROOKS
ONE WALL STREET
NEW YORK, NY 10286

**BANK OF NEW YORK MELLON**
ATTN MARTIN FEIG VP
ONE WALL ST 8W
NEW YORK, NY 10286

**BLOOMBERG LP**
ATTN CUSTOMER SUPPORT
PO Box 30244
HARTFORD, CT 06150-0244

**BNY MELLON**
ATTN NATALIE CRISPIN
ONE WALL ST
NEW YORK, NY 10004

**BUSINESS WIRE**
ATTN ACCOUNTS RECEIVABLE
DEPARTMENT
DEPARTMENT 34182
PO Box 39000
SAN FRANCISCO, CA 94139

**CITIBANK NA**
ROBERT ATTRIDE
388 GREENWICH ST 24TH FL
NEW YORK, NY 10013

**DAVID B NEMSCHOFF**
59 LEHIGH CT
ROCKVILLE CENTRE, NY 11570

**DEPARTMENT OF JUSTICE - US
ATTORNEY GENERAL**
COMMERCIAL LITIGATION BRANCH
MICHAEL B MUKASEY
950 PENNSYLVANIA AVE NW
WASHINGTON, DC 20530-0001

**DUFF & PHELPS, LLC**
12595 COLLECTION CTR DR
CHICAGO, IL 60693

**DUFF & PHELPS, LLC**
ATTN JEFF SCHIEDEMEYER
311 SOUTH WACKER DR
CHICAGO, IL 60606

**FINANCIAL SERVICES INDUSTRY
AREA 1 COUNSEL**
ROLAND BARRAL
33 MAIDEN LN 12TH FL
NEW YORK, NY 10038

**FOLEY & LARDNER LLP**
FRANK W DICASTRI
777 W WISCONSIN AVE
MILWAUKEE, WI 53202

**GRM INFORMATION MGT
SERVICES**
ACCOUNTS RECEIVABLE DEPT
NEWARK POST OFFICE
PO BOX 35539
NEWARK, NJ 07193-5539

**HALCYON MASTER FUND LP**
ATTN JOHN W GREENE JR MANAGING
PRINCIPAL
477 MADISON AVE 8TH FL
NEW YORK, NY 10022

**INTERNAL REVENUE SERVICE**
CENTRALIZED INSOLVENCY SECTION
11601 ROOSEVELT BLVD
MAIL DROP N781
PHILADELPHIA, PA 19255

**INTERNAL REVENUE SERVICE**
CENTRALIZED INSOLVENCY SECTION
PO BOX 21126
PHILADELPHIA, PA 19114-0326

**INTEX SOLUTIONS, INC**
ATTN ACCOUNTING DEPT
110 A ST
NEEDHAM, MA 02494-2807

**INTRALINKS, INC**
ATTN BILLING
PO Box 10259
NEW YORK, NY 10259-0259

**JAMES C. LANNING**
1901 BUTTERFIELD RD STE 310
DOWNERS GROVE, IL 60515

**LAW DEBENTURE TRUST COMPANY
OF NEW YORK**
ATTN ANTHONY A BOCCHINO
MANAGING DIRECTOR
400 MADISON AVENUE 4TH FL
NEW YORK, NY 10017

**MORRISON & FOERSTER LLP**
ATTN ANTHONY PRINCI
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104

**MORRISON & FOERSTER LLP**
ATTN ANTHONY PRINCI, GARY S. LEE
& BRETT H. MILLER
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104

**NEW YORK CITY**
DEPARTMENT OF FINANCE
ATTN J YANQUI ZAZA
345 ADAMS ST
BROOKLYN, NY 11201

**NEWMARK KNIGHT FRANK**
ATTN NIKKI VAN
125 PARK AVE
NEW YORK, NY 10017

**OFFICE OF THE NY STATE
ATTORNEY GENERAL**
ANDREW CUOMO
THE CAPITOL
ALBANY, NY 12224-0341

**OFFICE OF THE US ATTORNEY FOR
THE SOUTHERN DISTRICT OF NY**
ONE ST ANDREW'S PLZ
NEW YORK, NY 10007

**ONE STATE STREET LLC**
ATT ELI LEVITIN MANAGING
DIRECTOR
ONE STATE STREET PLZ 29TH FL
NEW YORK, NY 10004

**ONE STATE STREET PLAZA, LLC**
ATTN GOLDIE ZLOTNICK
ONE STATE ST PLZ
NEW YORK, NY 10004

**RR DONNELLEY RECEIVABLES**
ATTN PETER GOGOLAK
PO Box 13654
NEWARK, NJ 07188-0001
**SECURITIES AND EXCHANGE
COMMISION**
CHRISTOPHER COX
100 F ST NE
WASHINGTON, DC 20549

**SECURITIES AND EXCHANGE
COMMISION**
NEW YORK REGIONAL OFFICE
MARK SCHONFELD
3 WORLDS FINANCIAL CTR STE 400
NEW YORK, NY 10281

**THE MCMILLAN LAW FIRM APC**
SCOTT A MCMILLIAN
4670 NEBO DR STE 200
LA MESA, CA 91941-5230

**THOMSON FINANCIAL**
ATTN CUSTOMER CARE
PO Box 5136
CAROL STREAM, IL 60197-5136

**UNITED STATES BANKRUPTCY
COURT SDNY**
THE HONORABLE SHELLEY C.
CHAPMAN
ONE BOWLING GREEN
NEW YORK, NY 10004

**US TRUSTEE FOR THE DISTRICT OF
SOUTHERN NEW YORK**
BRIAN MASUMOTO
33 WHITEHALL ST 21ST FL
NEW YORK, NY 10004

**VALUE WORKS LLC**
ATT CHARLES LEMONIDES
PRINCIPAL
1450 BROADWAY 42ND FL
NEW YORK, NY 10018

**WESTLAW BUSINESS PAYMENT
CENTER**
ACCOUNTS RECEIVABLE DEPT
PO BOX 6292
CAROL STREAM, IL 60197-6292