**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

                                  :

*In re*                              :

                                  :     **Chapter 11**

**AMBAC FINANCIAL GROUP, INC.,**     :

                                  :     **Case No. 10-15973 (SCC)**

               **Debtor.**          :

                                  :

-------------------------------------------------------------x

## PLAN OF REORGANIZATION OF AMBAC FINANCIAL GROUP, INC.

Peter A. Ivanick
Allison H. Weiss
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Todd L. Padnos (admitted *pro hac vice*)
DEWEY & LEBOEUF LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303
Tel: (650) 845-7000
Fax: (650) 845-7333

*Attorneys for the Debtor and Debtor in Possession*

Dated: July 6, 2011
       New York, New York

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF CONSTRUCTION,  COMPUTATION OF TIME, AND GOVERNING LAW .................................................................................. 1
    A.    Defined Terms ................................................................................. 1
    B.    Rules of Construction ................................................................... 16
    C.    Computation of Time .................................................................... 17
    D.    Governing Law .............................................................................. 17
    E.    Reference to the Debtor or the Reorganized Debtor.......................... 17

ARTICLE II. ADMINISTRATIVE CLAIMS, ACCRUED PROFESSIONAL COMPENSATION CLAIMS, PRIORITY TAX CLAIMS, U.S. TRUSTEE FEES, AND INDENTURE TRUSTEE FEES ........................................................................ 17
    A.    Administrative Claims ................................................................... 17
    B.    Administrative Claims Bar Date .................................................... 18
    C.    Accrued Professional Compensation .............................................. 18
    D.    Priority Tax Claims........................................................................ 18
    E.    U.S. Trustee Fees .......................................................................... 19
    F.    Indenture Trustee Fees and Informal Group Fees.............................. 19

ARTICLE III. CLASSIFICATION AND TREATMENT  OF CLAIMS AND EQUITY INTERESTS ...................................................................................................... 19
    A.    Summary of Classification of Claims and Equity Interests................. 19
    B.    Treatment of Claims and Equity Interests ......................................... 20
        1.    Class 1 – Priority Non-Tax Claims........................................ 20
        2.    Class 2 – Secured Claims...................................................... 20
        3.    Class 3 – General Unsecured Claims...................................... 21
        4.    Class 4 – Senior Notes Claims............................................... 21
        5.    Class 5 – Subordinated Notes Claims...................................... 22
        6.    Class 6 – Section 510(b) Claims............................................ 23
        7.    Class 7 – Intercompany Claims .............................................. 23
        8.    Class 8 – Equity Interests...................................................... 23
    C.    Subordinated Claims...................................................................... 24
    D.    Confirmation Pursuant to Bankruptcy Code Section 1129(b) ............. 24
    E.    Elimination of Vacant Classes........................................................ 24
    F.    Controversy Concerning Impairment ............................................... 24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN......................... 24
    A.    Sources of Consideration for Monetary Plan Distributions................. 24
    B.    New Organizational Documents ...................................................... 25
    C.    Continued Corporate Existence ...................................................... 25
    D.    Vesting of Assets in the Reorganized Debtor .................................... 25
    E.    New Common Stock ...................................................................... 25
    F.    Section 1145 Exemption ................................................................ 25
    G.    Cancellation of Securities and Indentures......................................... 26
    H.    Plan Settlement ............................................................................. 26
        1.    Consequences of Acceptance by OCI and AAC of the Plan Settlement .. 26

        2.      Consequences of Rejection by OCI and AAC of the Plan Settlement ..... 26
I.     Directors and Officers of the Reorganized Debtor .............................................. 27
J.     Corporate Action ............................................................................................... 27
K     Effectuating Documents; Further Transactions .................................................. 28
L     Exemption from Certain Taxes and Fees ............................................................ 28
M     Litigation Trust .................................................................................................. 28

ARTICLE V. TREATMENT OF EXECUTORY  CONTRACTS AND UNEXPIRED LEASES ........................................................................................................................... 28
A.     Assumption or Rejection of Executory Contracts and Unexpired Leases ........... 28
B.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........ 29
C.     Claims Based on Rejection of Executory Contracts and Unexpired Leases ........ 29
D.     Nonoccurrence of Effective Date ....................................................................... 30

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................... 30
A.     Record Date for Distributions ............................................................................ 30
B.     Timing and Calculation of Amounts to be Distributed ....................................... 30
C.     Disbursing Agent ............................................................................................... 30
D.     Rights and Powers of Disbursing Agent ............................................................ 31
        1.      Powers of the Disbursing Agent ............................................................ 31
        2.      Expenses Incurred On or After the Effective Date .................................. 31
E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions .......... 31
        1.      Delivery of Distributions ....................................................................... 31
        2.      Minimum; De Minimis Distributions ..................................................... 31
        3.      Undeliverable Distributions and Unclaimed Property ............................. 32
            (i)      Failure to Claim Undeliverable Distributions .............................. 32
            (ii)     Failure to Present Checks ............................................................ 32
F.     Compliance with Tax Requirements ................................................................... 32
G.     Allocations ........................................................................................................ 33
H.     Setoffs and Recoupment .................................................................................... 33
I.     Claims Paid or Payable by Third Parties ............................................................ 33
        1.      Claims Paid by Third Parties ................................................................. 33
        2.      Claims Payable by Third Parties ............................................................ 33

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND DISPUTED CLAIMS ............................................................................................. 34
A.     Resolution of Disputed Claims .......................................................................... 34
        1.      Allowance of Claims ............................................................................. 34
        2.      No Distribution Pending Allowance ....................................................... 34
        3.      Disputed Claims Reserve ....................................................................... 34
        4.      Prosecution of Objections to Claims ...................................................... 35
        5.      Claims Estimation ................................................................................. 35
        6.      Expungement or Adjustment of Claims Without Objection ..................... 35
        7.      Deadline to File Claims Objections ........................................................ 35
B.     Disallowance of Claims ..................................................................................... 35
C.     Amendments to Claims ...................................................................................... 36

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION,  AND RELATED PROVISIONS
............................................................................................................................. 36
    A.       Discharge of Claims and Termination of Equity Interests.................................... 36
    B.       Injunction ............................................................................................................ 36
    C.       Exculpation ......................................................................................................... 37
    D.       General Releases by the Debtor .......................................................................... 37
    E.       General Releases by Holders of Claims and Equity Interests.............................. 37
    F.       Releases Required Pursuant to the Stipulation of Settlement.............................. 38
    G.       Release of Liens.................................................................................................. 39

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION  AND CONSUMMATION
OF THE PLAN ..................................................................................................................... 39
    A.       Conditions Precedent to Confirmation................................................................ 39
    B.       Conditions Precedent to Consummation.............................................................. 39
    C.       Waiver of Conditions.......................................................................................... 40
    D.       Effect of Nonoccurrence of Conditions .............................................................. 40

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN........ 41
    A.       Modification and Amendments............................................................................ 41
    B.       Effect of Confirmation on Modifications ............................................................ 41
    C.       Revocation or Withdrawal of the Plan................................................................. 41

ARTICLE XI. RETENTION OF JURISDICTION................................................................. 41

ARTICLE XII. MISCELLANEOUS PROVISIONS ............................................................. 44
    A.       Immediate Binding Effect................................................................................... 44
    B.       Additional Documents ........................................................................................ 44
    C.       Payment of Statutory Fees .................................................................................. 44
    D.       Dissolution of Committee .................................................................................... 44
    E.       Reservation of Rights.......................................................................................... 45
    F.       Successors and Assigns....................................................................................... 45
    G.       Service of Documents ......................................................................................... 45
    H.       Further Assurances.............................................................................................. 46
    I.       Term of Injunctions or Stays............................................................................... 46
    J.       Entire Agreement ............................................................................................... 46
    K.       Exhibits and Related Documents ........................................................................ 46
    L.       Severability of Plan Provisions........................................................................... 47
    M.       Closing of Chapter 11 Case ................................................................................ 47
    N.       Waiver or Estoppel Conflicts.............................................................................. 47
    O.       Conflicts.............................................................................................................. 47

## EXHIBITS (TO BE PROVIDED)

Exhibit A: Cost Allocation Agreement
Exhibit B: General Unsecured Warrant Agreement
Exhibit C: Litigation Trust Agreement
Exhibit D: Reorganized AFG By-laws
Exhibit E: Reorganized AFG Certificate of Incorporation
Exhibit F: Schedule of Assumed Executory Contracts and Unexpired Leases
Exhibit G: Subordinated Notes Warrant Agreement
Exhibit H: TSA Agreement A
Exhibit I: TSA Amendment B
Exhibit J: TSA Amendment C

# INTRODUCTION

Ambac Financial Group, Inc. (the "<u>Debtor</u>") respectfully proposes the following chapter 11 plan of reorganization (as amended, supplemented, or modified, the "<u>Plan</u>"). Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I of the Plan.

## ARTICLE I.

## DEFINED TERMS, RULES OF CONSTRUCTION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.    Defined Terms

1.    "<u>5.875% Debentures Due 2103</u>" means those certain 5.875% debentures due on March 24, 2103 and issued pursuant to the 2001 Indenture.

2.    "<u>5.95% Debentures Due 2035</u>" means those certain 5.95% debentures due on December 5, 2035 and issued pursuant to the 2003 Indenture.

3.    "<u>5.95% Debentures Due 2103</u>" means those certain 5.95% debentures due on February 28, 2103 and issued pursuant to the 2001 Indenture.

4.    "<u>7-1/2% Debentures Due 2023</u>" means those certain 7-1/2% debentures due on May 1, 2023 and issued pursuant to the 1991 Indenture.

5.    "<u>9-3/8% Debentures Due 2011</u>" means those certain 9-3/8% debentures due on August 1, 2011 and issued pursuant to the 1991 Indenture.

6.    "<u>9.50% Senior Notes Due 2021</u>" means those certain 9.50% senior notes due on February 15, 2021 and issued pursuant to the 2008 Indenture.

7.    "<u>1991 Indenture</u>" means that certain Indenture, dated as of August 1, 1991, between the Debtor and The Bank of New York Mellon, as successor indenture trustee to The Chase Manhattan Bank (National Association).

8.    "<u>2001 Indenture</u>" means that certain Indenture, dated as of August 24, 2001, between the Debtor and The Bank of New York Mellon, as successor indenture trustee to The Chase Manhattan Bank (National Association).

9.    "<u>2003 Indenture</u>" means that certain Indenture, dated as of April 22, 2003, between the Debtor and The Bank of New York Mellon, as successor indenture trustee to JPMorgan Chase Bank.

10.    "<u>2008 Indenture</u>" means that certain Indenture, dated as of February 15, 2006 between the Debtor and The Bank of New York Mellon, as successor in interest to The Bank of New York, as supplemented by the Supplemental Indenture, dated as of March 12, 2008, between the Debtor and The Bank of New York Mellon, as successor in interest to The Bank of

New York, together with the Purchase Contract Agreement, dated as of March 12, 2008, between the Debtor and The Bank of New York Mellon, as successor in interest to The Bank of New York, and the Pledge Agreement, dated as of March 12, 2008, between the Debtor and The Bank of New York Mellon, as successor in interest to The Bank of New York.

11.     "AAC" means Ambac Assurance Corporation.

12.     "Accrued Professional Compensation" means all Claims for accrued fees and expenses for services rendered by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.

13.     "Administrative Claim" means a Claim for costs and expenses of administration pursuant to Bankruptcy Code sections 503(b), 507(b), or 1114(e)(2), including, without limitation, (i) the actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the Debtor's business; (ii) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930; and (iii) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to Bankruptcy Code sections 503(b)(3)-(5).

14.     "Affiliate" means an "affiliate" as such term is defined in Bankruptcy Code section 101(2).  For the avoidance of doubt, Affiliate includes AAC.

15.     "AFG Prime" means a limited liability company to which more than 20% of the Reorganized Debtor's stock in AAC or economic rights in more than 20% of its stock in AAC may be transferred pursuant to Article IV.H.2 of the Plan

16.     "Allowed" means, with respect to a Claim against the Estate, (i) any Claim, proof of which has been timely Filed by the applicable Claims Bar Date; (ii) any Claim that is listed in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary Proof of Claim has been timely Filed; (iii) any Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided*, *however*, that with respect to any Claim described in clauses (i) and (ii) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or by a Final Order of the Bankruptcy Court.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

17.     "Ambac Entities," as defined in the Stipulation of Settlement, means the Debtor, the Reorganized Debtor, and any and all of their current and former parents, Affiliates, subsidiaries, predecessors, successors, heirs, estates, administrators, and legal Representatives.

18.    "Avoidance Actions" means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553.

19.    "Bankruptcy Code" means title 11 of the United States Code.

20.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or any other court having jurisdiction over the Chapter 11 Case.

21.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court.

22.    "Bar Date Order" means the *Order Pursuant to Sections 105(a) and 501 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003, and Local Rule 3003-1 (i) Establishing Deadlines for Filing Proofs of Claim and Requests for Payment and (ii) Approving the Form and Manner of Notice Thereof*, entered by the Bankruptcy Court on January 19, 2011 [Docket No. 127], as amended, supplemented, or modified.

23.    "Beneficial Interest" means any ownership interest or share in an Entity or Person, including, without limitation, options, warrants, rights, or other securities or agreements to acquire such interest or share in such Entity or Person, whether or not transferrable, preferred, common, or voting and whether or not arising under or in connection with any employment agreement.

24.    "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

25.    "Cash" means legal tender of the United States of America or the equivalent thereof.

26.    "Cash Grant" means Cash in the amount of $30 million.

27.    "Cause of Action" means any Claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

28.    "CDS Settlement Agreement" means the settlement agreement among AAC, Ambac Credit Products, LLC, the Debtor, and certain credit default swap contract counterparties, dated as of June 7, 2010, pursuant to which, in exchange for the termination of certain commuted

obligations, AAC paid to such counterparties $2,600,000,000 in Cash and $2,000,000,000 of surplus notes of AAC that have a scheduled maturity of June 7, 2020.

29. "Chapter 11 Case" means the case Filed by the Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code, as referenced by Case No. 10-15973 (SCC).

30. "Chief Executive Officer" means, effective July 7, 2011, Diana Adams, the Debtor's President and Chief Executive Officer.

31. "Claim" means a "claim" as such term is defined in Bankruptcy Code section 101(5).

32. "Claims Bar Date" means the deadline by which a Proof of Claim must be or must have been Filed, as established by the Bar Date Order or the Plan, or with respect to Proofs of Claim for certain former officers and directors of the Debtor, August 1, 2011, or such date as further extended pursuant to the *Order Extending the Deadline For Filing Proofs of Claim For Certain Former Officers And/Or Directors of the Debtor* [Docket No. 196].

33. "Claims Objection Bar Date" means the date that is 90 days after the Effective Date, or such later date as may be fixed by order of the Bankruptcy Court.

34. "Claims Register" means the official register of Claims maintained by Kurtzman Carson Consultants LLC, in its capacity as the Debtor's notice and claims agent.

35. "Class" means a category of Holders of Claims or Equity Interests established pursuant to Article III of the Plan.

36. "Class Period" means, with respect to the Securities Actions, the period from October 19, 2005 through and including July 18, 2009.

37. "Commencement Date" means November 8, 2010.

38. "Committee" means the Statutory Committee of Creditors in the Chapter 11 Case.

39. "Confirmation" means the entry on the docket of the Chapter 11 Case of the Confirmation Order.

40. "Confirmation Date" means the date upon which the Bankruptcy Court enters on the docket of the Chapter 11 Case the Confirmation Order.

41. "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to Bankruptcy Code section 1128 to consider confirmation of the Plan, as the same may be continued from time to time.

42. "Confirmation Order" means the order pursuant to Bankruptcy Code section 1129 of the Bankruptcy Court confirming the Plan, as amended, supplemented, or modified.

43. "Consummation" means the occurrence of the Effective Date.

44. "Cost Allocation Agreement" means an agreement among the Debtor, AAC, and their Affiliates other than Ambac Assurance UK Limited, substantially in the form attached hereto as Exhibit A.

45. "Cure Claim" means a Claim based upon a monetary default, if any, by the Debtor on an executory contract or unexpired lease at the time such contract or lease is assumed by the Debtor pursuant to Bankruptcy Code sections 365 or 1123.

46. "D&O Insurers" means the Debtor's director and officer liability insurance carriers which are or become parties to the Insurer Agreement.

47. "Debtor" means Ambac Financial Group, Inc.

48. "Deconsolidation Event" means any event that results in neither AAC nor any entity that, pursuant to IRC section 381, succeeds to the tax attributes of AAC described in IRC section 381(b) being characterized as an includible corporation with the affiliated group of corporations of which the Debtor, the Reorganized Debtor, or any successor thereto is the common parent, all within the meaning of IRC section 1504.

49. "Derivative Actions" means *In re Ambac Financial Group, Inc. Derivative Litigation*, No. 08-cv-854-SHS (S.D.N.Y.), *In re Ambac Financial Group, Inc. Shareholder Derivative Litigation*, C.A. No. 3521-VCL (Del. Ch.), *In re Ambac Financial Group, Inc. Shareholder Derivative Litigation*, No. 650050/2008E (N.Y. Supp.), and/or any of the individual actions included therein or any of them.

50. "Disbursing Agent" means the Reorganized Debtor or the Entity or Entities chosen by the Reorganized Debtor to make or facilitate distributions pursuant to the Plan.

51. "Disclosure Statement" means the *Disclosure Statement for Debtor's Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

52. "Disputed Claim" means any Claim that is not yet Allowed.

53. "Disputed Claims Reserve" means a reserve of Cash and/or New Common Stock, to be created by the Debtor or the Reorganized Debtor, for the payment of Disputed Claims that become Allowed Claims after the Effective Date according to the procedures set forth in Article VII.A.3 of the Plan.

54. "Distribution Record Date" means the date that the Confirmation Order is entered by the Bankruptcy Court and shall be the date for determining which Holders of Allowed Claims are entitled to receive distributions under the Plan.

55. "District Court" means the United States District Court for the Southern District of New York or any other court having jurisdiction over the Securities Actions.

56. "<u>Effective Date</u>" means the first Business Day after the Confirmation Date on which no stay of the Confirmation Order is in effect and all of the conditions specified in Article IX.B of the Plan have been satisfied or waived pursuant to Article IX.C of the Plan.

57. "<u>Entity</u>" means an "entity" as such term is defined in Bankruptcy Code section 101(15).

58. "<u>Equity Interest</u>" means any ownership interest or share in the Debtor, including, without limitation, options, warrants, rights, or other securities or agreements to acquire such interest or share in the Debtor, whether or not transferrable, preferred, common, or voting and whether or not arising under or in connection with any employment agreement.

59. "<u>Estate</u>" means the estate of the Debtor created on the Commencement Date pursuant to Bankruptcy Code section 541.

60. "<u>File</u>" or "<u>Filed</u>" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

61. "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and no appeal or petition for certiorari or motion for reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for reargument or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule may be Filed relating to such order shall not prevent such order from being a Final Order.

62. "<u>General Unsecured Claim</u>" means any Claim against the Debtor that is not an Administrative Claim, a Priority Tax Claim, a Claim for Accrued Professional Compensation, a Claim for Indenture Trustee Fees, a Claim for U.S. Trustee Fees, a Priority Non-Tax Claim, a Secured Claim, a Senior Notes Claim, a Subordinated Notes Claim, a Section 510(b) Claim, an Intercompany Claim, or a Claim included in any other Class under the Plan.

63. "<u>General Unsecured Warrant Agreement</u>" means the agreement, substantially in the form attached hereto as <u>Exhibit B</u>.

64. "<u>General Unsecured Warrants</u>" means warrants, to be issued to the Holders of Allowed General Unsecured Claims pursuant to the terms of the General Unsecured Warrant Agreement, to acquire an amount of New Common Stock such that, in the aggregate, the amount of New Common Stock received by Holders of Allowed General Unsecured Claims shall not be diluted by the exercise of the Subordinated Notes Warrants, with an expiration date of the tenth anniversary of the Effective Date and an exercise price based on an implied total equity value for the Reorganized Debtor of $750,000,000.

65. "<u>Governmental Unit</u>" means "governmental unit" as such term is defined in Bankruptcy Code section 101(27).

66.     "<u>Holder</u>" means any Entity or Person holding a Claim or Equity Interest.

67.     "<u>Impaired</u>" means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is not Unimpaired.

68.     "<u>Indenture Trustee Fees</u>" means the reasonable and documented fees and expenses, including, without limitation, professional fees and expenses, of each Indenture Trustee incurred pursuant to the respective Indentures after the Commencement Date in connection with carrying out its duties as provided for under the applicable Indenture, service on the Committee, and making distributions under the Plan.

69.     "<u>Indenture Trustees</u>" means the Senior Notes Indenture Trustee and the Subordinated Notes Indenture Trustee.

70.     "<u>Indentures</u>" means the 1991 Indenture, the 2001 Indenture, the 2003 Indenture, the 2008 Indenture, and the Junior Subordinated Indenture.

71.     "<u>Individual Defendants</u>" means Michael A. Callen, Jill M. Considine, Robert J. Genader, W. Grant Gregory, Philip B. Lassiter, Sean T. Leonard, Thomas C. Theobald, John W. Uhlein, III, Laura S. Unger, Henry D.G. Wallace, David W. Wallis, Gregg L. Bienstock, Kevin J. Doyle, Philip Duff, Thomas J. Gandolfo, Kathleen McDonough, William T. McKinnon, Douglas C. Renfield-Miller, and Robert G. Shoback.

72.     "<u>Informal Group</u>" means that certain ad hoc group of unaffiliated holders of Senior Notes represented by Akin Gump Strauss Hauer & Feld LLP.

73.     "<u>Informal Group Fees</u>" means the reasonable and documented fees and expenses, including, without limitation, professional fees and expenses, of the Informal Group incurred after the Commencement Date.

74.     "<u>Insurer Agreement</u>" means the agreement contemplated by the Stipulation of Settlement, dated as of May 4, 2011, among the Debtor, the Individual Defendants, and the D&O Insurers.

75.     "<u>Intercompany Claim</u>" means any Claim held by any Affiliate against the Debtor.

76.     "<u>Interim Compensation Order</u>" means the *Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 2016-1 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals*, entered by the Bankruptcy Court on December 21, 2010 [Docket No. 81], as amended, supplemented, or modified.

77.     "<u>IRC</u>" means title 26 of the United States Code.

78.     "<u>IRS</u>" means the Department of the Treasury – Internal Revenue Service.

79.     "<u>IRS Adversary Proceeding</u>" means the adversary proceeding in the Chapter 11 Case captioned *Ambac Financial Group, Inc. and The Official Committee of Unsecured*

*Creditors v. United States of America*, Adv. Pro. No. 10-4210 (SCC) and any and all actions or proceedings relating thereto.

80.      "IRS Claims" means any and all Proofs of Claim Filed by the IRS in the Chapter 11 Case, including Proof of Claim Nos. 3694 and 3699.

81.      "IRS Dispute" means any and all litigation arising from or relating to the IRS Claims or the IRS Adversary Proceeding.

82.      "Junior Subordinated Indenture" means that certain Junior Subordinated Indenture, dated as of February 12, 2007, between the Debtor and Law Debenture Trust Company of New York, as successor indenture trustee to The Bank of New York Mellon, as supplemented by a First Supplemental Indenture, dated as of February 12, 2007, between the Debtor and Law Debenture Trust Company of New York, as successor indenture trustee to The Bank of New York Mellon.

83.      "Junior Surplus Notes" means the 5.1% unsecured notes issued by the Segregated Account in accordance with the Rehabilitation Plan and scheduled to mature on June 7, 2020. For the avoidance of doubt, the terms of the Junior Surplus Notes transferred to the Reorganized Debtor, if any, shall be no less favorable than those extended to any other recipient of such notes.

84.      "Lien" means a "lien" as such term is defined in Bankruptcy Code section 101(37).

85.      "Litigation Trust" means the trust to be established in accordance with the Litigation Trust Agreement on the Effective Date.

86.      "Litigation Trust Agreement" means the agreement to between the Debtor and the Litigation Trustee that, among other things, creates and establishes the Litigation Trust, describes the powers, duties, and responsibilities of the Litigation Trustee, and provides for the distribution of proceeds of the Litigation Trust's assets, which agreement shall be substantially in the form attached hereto as Exhibit C.

87.      "Litigation Trust Assets" means, the following potential or actual Causes of Action against AAC, the Segregated Account and OCI to be preserved and transferred by the Reorganized Debtor to the Litigation Trust on the Effective Date pursuant to Article IV.M of the Plan if OCI and AAC have not accepted the Plan Settlement prior to the Plan Settlement Deadline:

      (i)      Claims and Causes of Action against AAC, the Segregated Account or OCI to avoid and/or recover certain tax-related payments made by the Debtor to AAC, including that certain tax refund for approximately $252.7 million received by the Debtor in September of 2009;

      (ii)     Claims and Causes of Action against AAC, the Segregated Account or OCI to avoid and/or recover certain tax-related payments made by the Debtor to AAC, including that certain tax refund for approximately $443.9 million received by the Debtor in February of 2010;

(iii)    Claims and Causes of Action against AAC, the Segregated Account or OCI pertaining to any possible misallocation of up to $38,485,850 of tax refunds received by AAC in September of 2009 and February of 2010; and

(iv)    any and all Claims and Causes of Action against AAC, the Segregated Account or OCI.

88.    "<u>Litigation Trustee</u>" means the trustee of the Litigation Trust appointed pursuant to the Litigation Trust Agreement.

89.    "<u>New Board</u>" means the initial board of directors of the Reorganized Debtor, to be appointed as of the Effective Date.

90.    "<u>New By-Laws</u>" means the new by-laws of the Reorganized Debtor, substantially in the form attached hereto as <u>Exhibit D</u>.

91.    "<u>New Certificate of Incorporation</u>" means the form of the initial certificate of incorporation of the Reorganized Debtor, substantially in the form attached hereto as <u>Exhibit E</u>.

92.    "<u>New Common Stock</u>" means the common stock in the Reorganized Debtor to be authorized, issued, or outstanding on the Effective Date, which collectively shall constitute all equity interests in the Reorganized Debtor.

93.    "<u>New Organizational Documents</u>" means the New Certificate of Incorporation and New By-Laws.

94.    "<u>NOLs</u>" means net operating losses as determined for U.S. federal income tax purposes.

95.    "<u>OCI</u>" means the Office of the Commissioner of Insurance for the State of Wisconsin in its role as regulator of AAC, and/or the Commissioner of Insurance for the State of Wisconsin in his role as rehabilitator of the Segregated Account, as applicable.

96.    "<u>OSS Settlement Agreement</u>" means the Settlement, Discontinuance, and Release Agreement, dated as of March 1, 2011, among One State Street, LLC, the Debtor, AAC, and the Segregated Account, approved by the Bankruptcy Court on March 24, 2011 [Docket No. 223].

97.    "<u>Person</u>" means a "person" as such term is defined in Bankruptcy Code section 101(41).

98.    "<u>Plan Settlement</u>" means the global compromise and settlement of certain disputes among the Debtor, AAC, the Committee, the Informal Group and OCI. Pursuant to the Plan Settlement, in full and final satisfaction, settlement, release and discharge of and in exchange for the relinquishment of certain Causes of Action against AAC, the Segregated Account and OCI,

(i)      following the Confirmation Date or as soon as practicable thereafter, the Debtor shall cause its Affiliates to enter into the Cost Allocation Agreement, and OCI shall agree to such entry;

(ii)     upon execution of the Plan Settlement, AAC and the Debtor will share the fees and expenses incurred by the Debtor in relation to the IRS Dispute, on the basis of 85% to AAC and 15% to the Debtor, including, for the avoidance of doubt, all fees and expense incurred by the Debtor in relation to the IRS Dispute since the Commencement Date;

(iii)    (a) the Debtor shall assume the TSA pursuant to Article V.A of the Plan, subject to the occurrence of the Effective Date and effective as of the Effective Date, and (b) on the Confirmation Date or as soon as practicable thereafter, the Debtor shall cause its Affiliates to enter into either TSA Amendment A, TSA Amendment B or TSA Amendment C;

(iv)    TSA Amendment A, TSA Amendment B and TSA Amendment C provide for differing conditions of use of NOLs, which shall be allocated as follows:

    (a)    Any NOLs generated by AAC (determined on a separate company tax basis) and other members of the AAC Subgroup (as defined in the TSA) occurring after the date (such date being hereafter referred to as the "Determination Date") which is the earlier of (i) the last day of the calendar quarter preceding the Effective Date and (ii) December 31, 2011 (the "Post-Determination Date NOLs"), shall be available to AAC at no cost.

    (b)    Any NOLs generated by AAC (determined on a separate company tax basis) and other members of the AAC Subgroup on or prior to, and existing on, the Determination Date not taking into account the consequences of any settlement with respect to the IRS Dispute ("Pre-Determination Date NOLs") shall be available for use by the AAC Subgroup as set forth in the applicable TSA Amendment.

    (c)    Unless and until there has been a Deconsolidation Event, the amount of Pre-Determination Date NOLs allocated to, and available for use by, the AAC Subgroup to offset income for regular tax and alternative minimum tax purposes ("Allocated NOLs") shall be an amount (such amount being hereinafter referred to as the "Allocated NOLs Amount") equal to:

        i.    The "Pre-Settlement NOL Amount," defined as the lesser of

            (1)    $4.0 billion; and

(2)     the total amount of Pre-Determination Date NOLs, MINUS the sum of (A) the amount of cancellation of indebtedness income ("CODI") within the meaning of IRC section 108, realized by the Debtor pursuant to the consummation of the Plan and (B) the amount of interest disallowed pursuant to IRC section 382(l)(5)(B) upon the consummation of the Plan ("Interest Recapture" and, together with CODI, "Debt-Related Income")

ii.     MINUS the AAC Pro Rata Settlement Portion.

(d)     A reduction in the Pre-Determination Date NOLs as a result of a settlement of the IRS Dispute prior to the Effective Date ("Pre-Effective Date Settlement Amount") shall be allocated as follows:

i.      "AAC Pro Rata Settlement Portion":  The product of (1) the Pre-Effective Date Settlement Amount and (2) the ratio of (x) $4.0 billion to (y) (i) Pre-Determination Date NOLs minus (ii) Debt-Related Income.

ii.     "AFG Pro Rata Settlement Portion":  Pre-Effective Date Settlement Amount reduced by the AAC Pro Rata Settlement Portion;

(v)     (1) in the event that TSA Amendment A is entered into, if a corresponding amended plan of rehabilitation with respect to the Segregated Account has not been proposed to the Rehabilitation Court by December 31, 2011, AAC shall make a Cash payment to the Debtor or the Reorganized Debtor of $50,000,000, and further, if such plan of rehabilitation has not been confirmed by the Rehabilitation Court by March 31, 2012, AAC shall make an additional Cash payment to the Debtor or the Reorganized Debtor of $50,000,000, and further, if a plan of rehabilitation has not become effective by June 30, 2012, AAC shall make a Cash payment to the Debtor or the Reorganized Debtor of $100,000,000; or (2) in the event that TSA Amendment B is entered into, if the Rehabilitation Plan has not become effective, without modification or change, by December 31, 2011, AAC shall make a Cash payment to the Debtor or the Reorganized Debtor of $200,000,000; *provided*, *however*, that all Cash payments made by AAC pursuant to (1) or (2) above shall serve as a credit, without duplication, against future payments in respect of Allocated NOLs;

(vi)    on the Effective Date or as soon as practicable thereafter, AAC shall deliver the Cash Grant to the Reorganized Debtor; *provided*, *however*, that up to $15 million of the Cash Grant shall serve as a credit, without duplication, against future payments owed by AAC to the Reorganized Debtor pursuant to TSA Amendment A or TSA Amendment B, as

applicable; *provided further*, *however*, that until the fifth anniversary of the Effective Date, if the balance of the Cash Grant at any time is (or as a result of a Cash dividend payment would become) $15,000,000 or less, the Reorganized Debtor shall not pay Cash dividends or make any other Cash distributions to Holders of New Common Stock;

(vii) the Debtor and the Reorganized Debtor, as applicable, shall not take any actions which would result in the occurrence of a Deconsolidation Event;

(viii) OCI shall agree that in the event that any obligations of AAC under the Plan Settlement (including for the avoidance of doubt, any obligations under the TSA as amended by TSA Amendment A, TSA Amendment B or TSA Amendment C) become subject to the authority of the Rehabilitation Court or another court overseeing a rehabilitation or other insolvency proceeding with respect to AAC, all such obligations shall be provided administrative expense status in such rehabilitation or other insolvency proceeding;

(ix) on the Effective Date or as soon as practicable thereafter, the Segregated Account shall issue $350,000,000 of Junior Surplus Notes to the Reorganized Debtor;

(x) OCI shall support the petition for prompt approval by the Rehabilitation Court of all transactions contemplated by the Plan;

(xi) OCI shall allow AAC to repurchase surplus notes, preferred stock, or other securities issued pursuant to the Rehabilitation Plan (whether issued by AAC or the Segregated Account), subject to OCI's determination in its sole and absolute discretion that such repurchases do not violate applicable law, are fair and reasonable to AAC and the Segregated Account, and protect and are equitable to the interests of AAC and the Segregated Account policyholders generally;

(xii) OCI shall allow AAC to undertake commercially reasonable efforts to transfer to the Reorganized Debtor more than an insignificant amount of an active trade or business;

(xiii) the transactions described in the Plan shall be structured, to the extent practicable, to comply with the CDS Settlement Agreement and the Rehabilitation Plan;

(xiv) to the extent that either the Debtor, the Reorganized Debtor, or a direct or indirect holder of a Beneficial Interest in the Debtor or the Reorganized Debtor requires OCI's consent with respect to any transfer or issuance of a Beneficial Interest in either the Debtor, the Reorganized Debtor or AAC, OCI shall not unreasonably withhold its consent to such transfer and shall notify the Debtor or the Reorganized Debtor of its decision within a reasonable period of time, not exceeding sixty (60) days; *provided*,

*however*, such transfer does not result in an "ownership change," as determined for purposes under IRC section 382;

    (xv)    the Causes of Action against AAC, the Segregated Account and OCI shall not be transferred to the Litigation Trust pursuant to Article IV.M of the Plan; and

    (xvi)    the definition of "Released Parties" in the Plan shall include AAC, the Segregated Account and OCI.

99.    "<u>Plan Settlement Deadline</u>" means July 29, 2011.

100.    "<u>Priority Tax Claim</u>" means a Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

101.    "<u>Priority Non-Tax Claim</u>" means a Claim entitled to priority in right of payment pursuant to Bankruptcy Code section 507(a), other than an Administrative Claim, a Claim for Accrued Professional Compensation, or a Priority Tax Claim.

102.    "<u>Pro Rata</u>" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion of a particular recovery that a Class is entitled to share with other Classes entitled to the same recovery under the Plan.

103.    "<u>Professional</u>" means any Person or Entity retained by order of the Bankruptcy Court in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, 330, or 1103, excluding any ordinary course professionals retained pursuant to a Final Order of the Bankruptcy Court.

104.    "<u>Proof of Claim</u>" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

105.    "<u>Rehabilitation Court</u>" means the Circuit Court of Dane County Wisconsin, with respect to the Segregated Account rehabilitation proceeding, Case No. 10-cv-1576.

106.    "<u>Released Parties</u>" means either of the following:

    (i)    if OCI and AAC have accepted the Plan Settlement prior to the Plan Settlement Deadline, collectively, the Debtor, the Reorganized Debtor, AAC, the Segregated Account, OCI, the board of directors and board committees of the Debtor and AAC, all current and former individual directors, officers, or employees of the Debtor and AAC, the Committee and the individual members thereof, the Indenture Trustees, the Informal Group and the individual members thereof, and each of their respective Representatives (each of the foregoing in its individual capacity as such); or

(ii)    if OCI and AAC have not accepted the Plan Settlement prior to the Plan Settlement Deadline, collectively, the Debtor, the Reorganized Debtor, the board of directors and board committees of the Debtor and AAC, all current and former individual directors, officers, or employees of the Debtor and AAC, the Committee and the individual members thereof, the Indenture Trustees, the Informal Group and the individual members thereof, and each of their respective Representatives (each of the foregoing in its individual capacity as such).

107.    "Rehabilitation Plan" means the plan of rehabilitation with respect to the Segregated Account, as confirmed by the Rehabilitation Court on January 24, 2011.

108.    "Reorganized Debtor" means Ambac Financial Group, Inc., as reorganized under and pursuant to the Plan, or any successor thereto, by merger, consolidation, transfer of substantially all assets, or otherwise, on and after the Effective Date.

109.    "Representatives" means, with respect to an Entity, such Entity's directors, officers, employees, members, attorneys, financial advisors, accountants, agents, and their respective professional firms.

110.    "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule of certain executory contracts and unexpired leases to be assumed by the Debtor pursuant to the Plan, as amended, supplemented, or modified at any time before the Effective Date, a copy of which is attached hereto as Exhibit F.

111.    "Schedules" means the Debtor's schedule of assets and liabilities and statement of financial affairs, as amended, supplemented, or modified.

112.    "Section 510(b) Claim" means any Claim that is subordinated to General Unsecured Claims, Senior Notes Claims, or Subordinated Notes Claims or subject to such subordination under Bankruptcy Code section 510(b), including Claims arising from the purchase or sale of a security of the Debtor for damages, reimbursement, or contribution.

113.    "Secured Claim" means a prepetition Claim that is secured by a Lien, or that has the benefit of rights of setoff under Bankruptcy Code section 553, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined by the Bankruptcy Court pursuant to Bankruptcy Code sections 506(a), 553, and/or 1129(b)(2)(A), as applicable.

114.    "Securities Actions" means the consolidated action captioned *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-cv-411-NRB (S.D.N.Y.) and the action captioned *Tolin v. Ambac Financial Group, Inc., et al.*, No. 08-cv-11241-CM (S.D.N.Y.).

115.    "<u>Segregated Account</u>" means the segregated account of AAC, established pursuant to a plan of operation which sets forth the manner by which AAC shall establish and operate such segregated account in accordance with Wis. Stat. § 611.24(2).

116.    "<u>Senior Notes</u>" means the 9-3/8% Debentures Due 2011, the 7-1/2% Debentures Due 2023, the 5.95% Debentures Due 2103, the 5.875% Debentures Due 2103, the 5.95% Debentures Due 2035, and the 9.50% Senior Notes Due 2021.

117.    "<u>Senior Notes Claim</u>" means any Claim arising from or relating to the Senior Notes, excluding the fees and expenses of the Senior Notes Indenture Trustee, which fees and expenses shall be paid pursuant to Article II.F of the Plan.

118.    "<u>Senior Notes Indenture Trustee</u>" means The Bank of New York Mellon, as indenture trustee under the 1991 Indenture, the 2001 Indenture, the 2003 Indenture, and the 2008 Indenture, together with its respective successors and assigns in such capacity.

119.    "<u>Settlement Class</u>" means the settlement class comprising all persons who purchased or otherwise acquired any securities issued by the Debtor, including, without limitation, any Senior Notes, Subordinated Notes, Equity Interests, options thereon, or any STRATS during the Class Period.  Excluded from the Settlement Class are defendants in the Securities Actions, members of their immediate families, and their legal representatives, heirs, successors or assigns.  Also excluded from the Settlement Class are any persons who exclude themselves by filing a timely and valid request for exclusion in accordance with applicable requirements.

120.    "<u>Stipulation of Settlement</u>" means the *Stipulation of Settlement with Ambac and the Individual Defendants*, which has been preliminarily approved by the District Court in the Securities Actions, and attached as an exhibit to the Disclosure Statement and any agreements entered into in connection therewith or pursuant thereto and the orders of the Bankruptcy Court and/or the District Court with respect to the settlement of the Securities Actions.

121.    "<u>Subordinated Notes</u>" means those certain 6.15% Directly-Issued Subordinated Capital Securities due February 15, 2087, issued pursuant to the Junior Subordinated Indenture.

122.    "<u>Subordinated Notes Claim</u>" means any Claim arising from or relating to the Subordinated Notes, excluding the fees and expenses of the Subordinated Notes Indenture Trustee, which fees and expenses shall be paid pursuant to Article II.F of the Plan.

123.    "<u>Subordinated Notes Indenture Trustee</u>" means Law Debenture Trust Company of New York, as successor indenture trustee under the Junior Subordinated Indenture, together with its successors and assigns in such capacity.

124.    "<u>Subordinated Notes Warrant Agreement</u>" means the agreement, substantially in the form attached hereto as <u>Exhibit G</u>.

125.    "<u>Subordinated Notes Warrants</u>" means warrants, to be distributed to the Holders of Allowed Subordinated Notes Claims pursuant to the terms of the Subordinated Notes Warrant Agreement, to acquire 10% of the New Common Stock with customary anti-dilution provisions

to be set forth in the Subordinated Notes Warrant Agreement, and with an expiration date of the tenth anniversary of the Effective Date and an exercise price based on an implied total equity value for the Reorganized Debtor of $750,000,000.

126.     "<u>Trading Order</u>" means the *Final Order Pursuant to Sections 105(a), 362, and 541 of the Bankruptcy Code Establishing Procedures for Certain Transfers of Equity Interests in and Claims Against the Debtor*, entered by the Bankruptcy Court on November 30, 2010 [Docket No. 40]

127.     "<u>TSA</u>" means the Tax Sharing Agreement, entered into as of July 18, 1991, among the Debtor and certain of its Affiliates, as amended by (i) Amendment No. 1, effective as of October 1, 1997, (ii) Amendment No. 2, effective as of November 19, 2009, and (iii) Amendment No. 3, effective as of January 1, 2010, and as further amended, supplemented, or modified.

128.     "<u>TSA Amendment A</u>" means an amendment to the TSA, substantially in the form attached hereto as <u>Exhibit H</u>.

129.     "<u>TSA Amendment B</u>" means an amendment to the TSA, substantially in the form attached hereto as <u>Exhibit I</u>.

130.     "<u>TSA Amendment C</u>" means an amendment to the TSA, substantially in the form attached hereto as <u>Exhibit J</u>.

131.     "<u>Unimpaired</u>" means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is unimpaired within the meaning of Bankruptcy Code section 1124.

132.     "<u>U.S. Trustee</u>" means the Office of the United States Trustee for the Southern District of New York.

133.     "<u>U.S. Trustee Fees</u>" means fees arising under 28 U.S.C. § 1930, and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

## B.     Rules of Construction

For the purposes of the Plan: (i) terms and phrases, whether capitalized or not, that are used but not defined in the Plan, but that are defined in the Bankruptcy Code, shall have the meanings ascribed to them in the Bankruptcy Code; (ii) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (iii) any reference in the Plan to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; *provided*, *however*, that the "Rehabilitation Plan" refers only to the Rehabilitation Plan confirmed by the Rehabilitation Court on January 24, 2011; (iv) except as otherwise provided in the Plan, all references in the Plan to "Articles" are references to Articles of the Plan; (v) except as otherwise provided in the Plan, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi)

captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the rules of construction set forth in Bankruptcy Code section 102 shall apply; and (viii) any immaterial effectuating provisions may be interpreted by the Reorganized Debtor in a manner that is consistent with the overall purpose and intent of the Plan, all without further order of the Bankruptcy Court.

## C.     Computation of Time

Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.

## D.     Governing Law

Unless a rule of law or procedure is supplied by federal law or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, securities, instruments, or other documents executed or delivered in connection with the Plan (except as otherwise set forth in those documents, in which case the governing law of such documents shall control); *provided, however,* that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the State of Delaware.

## E.     Reference to the Debtor or the Reorganized Debtor

Except as otherwise provided in the Plan, references in the Plan to the Debtor or to the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent that the context requires.

**ARTICLE II.**

**ADMINISTRATIVE CLAIMS, ACCRUED PROFESSIONAL COMPENSATION CLAIMS, PRIORITY TAX CLAIMS, U.S. TRUSTEE FEES, AND INDENTURE TRUSTEE FEES**

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Claims for Accrued Professional Compensation, and Priority Tax Claims have not been classified and, therefore, are excluded from the Classes of Claims and Equity Interests set forth in Article III of the Plan and shall have the following treatment:

## A.     Administrative Claims

Except with respect to Administrative Claims that are Claims for Accrued Professional Compensation and except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full, in Cash, on the later of (i) the Effective Date or as soon as practicable thereafter; (ii) the first date such Administrative Claim becomes Allowed or as soon as practicable thereafter; and (iii) the date such Allowed Administrative Claim becomes due and payable by its terms or as soon as practicable thereafter.

**B.     Administrative Claims Bar Date**

Requests for the payment of Administrative Claims other than Claims for Accrued Professional Compensation must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order no later than sixty (60) days after the Effective Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Claims by such date shall be forever barred, estopped, and enjoined from asserting such Claims against the Debtor, the Reorganized Debtor, or their assets or properties and such Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Reorganized Debtor and the requesting party no later than ninety (90) days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order, including all Administrative Claims expressly Allowed under the Plan.

**C.     Accrued Professional Compensation**

Professionals asserting a Claim for Accrued Professional Compensation for services rendered before the Effective Date shall (i) File and serve on the Reorganized Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order, or other order of the Bankruptcy Court a final application for the allowance of such Claim for Accrued Professional Compensation no later than sixty (60) days after the Effective Date and; (ii) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court on the date such Claim for Accrued Professional Compensation becomes Allowed or as soon as practicable thereafter. Holders of Claims for Accrued Professional Compensation that do not File and serve such application by the required deadline shall be forever barred, estopped, and enjoined from asserting such Claims against the Debtor, the Reorganized Debtor, or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date. Objections to Claims for Accrued Professional Compensation shall be Filed no later than ninety (90) days after the Effective Date.

**D.     Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, at the option of the Debtor, one of the following treatments: (i) Cash, payable by the Debtor on the later of (a) the Effective Date and (b) the date on which such Priority Tax Claim becomes Allowed, or as soon as practicable thereafter, in an amount equal to the amount of such Allowed Priority Tax Claim; or (ii) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five (5) years after the Commencement Date, in accordance with Bankruptcy Code section 1129(a)(9)(C).

### E.     U.S. Trustee Fees

On the Effective Date or as soon as practicable thereafter, the Reorganized Debtor shall pay all U.S. Trustee Fees that are due and owing on the Effective Date. For the avoidance of doubt, nothing in the Plan shall release the Reorganized Debtor from its obligation to pay all U.S. Trustee Fees due and owing after the Effective Date before an order or final decree is entered by the Bankruptcy Court concluding or closing the Chapter 11 Case.

### F.     Indenture Trustee Fees and Informal Group Fees

On the Effective Date, the Reorganized Debtor shall pay in Cash the Indenture Trustee Fees and the Informal Group Fees, without the need for the Indenture Trustees or the Informal Group to file fee applications with the Bankruptcy Court; *provided*, *however*, that (i) each Indenture Trustee and the Informal Group shall provide the Debtor and the Committee with the invoices for which it seeks payment at least ten (10) days prior to the Effective Date; and (ii) the Debtor and the Committee do not object to the reasonableness of the Indenture Trustee Fees or the Informal Group Fees; *provided further*, *however*, that notwithstanding the foregoing, the Reorganized Debtor shall not be required to pay any Informal Group Fees unless (x) the Informal Group supports the Plan and (y) members of the Informal Group holding at least sixty-seven percent (67%) of the aggregate holdings of the Informal Group as of July 6, 2011, vote their Claims to accept the Plan. To the extent that the Debtor or the Committee objects to the reasonableness of any portion of the Indenture Trustee Fees or the Informal Group Fees, the Reorganized Debtor shall not be required to pay such disputed portion until either such objection is resolved or a further order of the Bankruptcy Court is entered providing for payment of such disputed portion. Notwithstanding anything in the Plan to the contrary, each Indenture Trustee's Lien against distributions or property held or collected by it for fees and expenses and priority rights pursuant to the Indentures shall be discharged solely upon payment of its Indenture Trustee Fees in full on the Effective Date and the termination of such Indenture Trustee's duties under the applicable Indenture.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND EQUITY INTERESTS

### A.     Summary of Classification of Claims and Equity Interests

All Claims and Equity Interests, except Administrative Claims, Accrued Professional Compensation Claims, Priority Tax Claims, and Indenture Trustee Fee Claims are classified in the Classes set forth in Article III of the Plan. A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

| Class | Claim/Equity Interest | Impairment | Voting Rights |
|-------|----------------------|------------|---------------|
| 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claim/Equity Interest | Impairment | Voting Rights |
|---|---|---|---|
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Senior Notes Claims | Impaired | Entitled to Vote |
| 5 | Subordinated Notes Claims | Impaired | Entitled to Vote |
| 6 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.      Treatment of Claims and Equity Interests**

The following summarizes the treatment of each Class:

1.      Class 1 – Priority Non-Tax Claims

(i)      *Classification*: Class 1 consists of all Priority Non-Tax Claims.

(ii)      *Treatment*: Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Non-Tax Claim, on the later of (a) the Effective Date and (b) the date on which such Priority Non-Tax Claim becomes Allowed, or as soon as practicable thereafter, each Holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash.

(iii)      *Voting*: Class 1 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), Holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan.

2.      Class 2 – Secured Claims

(i)      *Classification*: Class 2 consists of all Secured Claims.

(ii)      *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Claim, on the later of (a) the Effective Date and (b) the date on which such Secured Claim becomes Allowed, or as soon as practicable thereafter, each Holder of such Allowed Secured Claim shall receive, in the Reorganized Debtor's sole discretion, (1) Cash, including the payment

of any interest required to be paid pursuant to Bankruptcy Code section 506(b), in the amount equal to such Allowed Secured Claim, (2) the collateral securing such Allowed Secured Claim, or (3) any other treatment such that the Allowed Secured Claim will be Unimpaired; *provided, however*, that the aggregate amount of Allowed Secured Claims shall not exceed $200,000.00.

(iii)   *Voting*: Class 2 is Unimpaired.   Pursuant to Bankruptcy Code section 1126(f), Holders of Allowed Secured Claims are conclusively presumed to accept the Plan.

3.   Class 3 – General Unsecured Claims

(i)   *Classification*: Class 3 consists of all General Unsecured Claims.

(ii)   *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, on the later of (a) the Effective Date and (b) the date on which such General Unsecured Claim becomes Allowed, or as soon as practicable thereafter, each Holder of such Allowed General Unsecured Claim shall receive its Pro Rata share of (1) the New Common Stock distributed to Holders of Allowed General Unsecured Claims, Senior Notes Claims, and Subordinated Notes Claims pursuant to the Plan; and (2) the General Unsecured Warrants.

(iii)   *Voting*: Class 3 is Impaired.   Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.   Class 4 – Senior Notes Claims

(i)   *Classification*: Class 4 consists of all Senior Notes Claims.

(ii)   *Allowance of Senior Notes Claims*: The Senior Notes Claims shall be allowed in the aggregate amount of $1,246,129,468.66, comprised of (a) $410,115,000.00 in respect of the 5.95% Debentures Due 2035, (b) $176,085,243.06 in respect of the 5.875% Debentures Due 2103, (c) $201,256,111.11 in respect of the 5.95% Debentures Due 2103, (d) $77,921,875.00 in respect of the 7-1/2% Debentures Due 2023, (e) $125,275,545.05 in respect of the 9-3/8% Debentures Due 2011, and (f) $255,475,694.44 in respect of the 9.50% Senior Notes Due 2021. For the avoidance of doubt, the Allowed Senior Notes Claims shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (equitable or contractual or otherwise), counter-claim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation.

(iii)    *Treatment*: In full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Senior Notes Claim, on the Effective Date or as soon as practicable thereafter, each Holder of such Allowed Senior Notes Claim shall receive its Pro Rata share of the New Common Stock distributed to Holders of Allowed General Unsecured Claims, Senior Notes Claims, and Subordinated Notes Claims pursuant to the Plan, subject to the condition set forth below.  In addition, the Senior Notes Indenture Trustee shall receive redistributions of New Common Stock and Subordinated Notes Warrants from the Subordinated Notes Indenture Trustee in accordance with the subordination provisions of the Indentures; *provided*, *however*, that (1) the Senior Notes Indenture Trustee shall transfer to the Subordinated Notes Indenture Trustee the Subordinated Notes Warrants, to distribute on a Pro Rata basis to Holders of Allowed Subordinated Notes Claims; and (2) if the Class of Subordinated Notes Claims votes to accept the Plan, the Senior Notes Indenture Trustee shall, prior to distributing any New Common Stock to the Holders of Allowed Senior Notes Claims, transfer to the Subordinated Notes Indenture Trustee 1.5% of the New Common Stock that is distributed to creditors pursuant to the Plan, to distribute on a Pro Rata basis to Holders of Allowed Subordinated Notes Claims.

(iv)    *Voting*: Class 4 is Impaired.  Holders of Allowed Senior Notes Claims are entitled to vote to accept or reject the Plan.

5.    Class 5 – Subordinated Notes Claims

(i)    *Classification*: Class 5 consists of all Subordinated Notes Claims.

(ii)    *Allowance of Subordinated Notes Claims*: The Subordinated Notes Claims shall be allowed in the aggregate amount of $444,182,604.08. For the avoidance of doubt, the Allowed Subordinated Notes Claims shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (equitable or contractual or otherwise), counter-claim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation.

(iii)    *Treatment*: In full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Subordinated Notes Claim, on the Effective Date or as soon as practicable thereafter, each Holder of such Allowed Subordinated Notes Claim shall receive its Pro Rata share of (a) the New Common Stock distributed to Holders of Allowed General Unsecured Claims, Senior Notes Claims, and Subordinated Notes Claims pursuant to the Plan; and (b) the Subordinated Notes Warrants; *provided*, *however*, that any distribution of New Common Stock and Subordinated Notes Warrants to Holders of Allowed Subordinated Notes Claims shall be redistributed to the Senior Notes Indenture Trustee for the benefit of Holders of Allowed Senior Notes Claims in accordance with the

subordination provisions of the Indentures; *provided further*, *however*, that (1) the Senior Notes Indenture Trustee shall transfer to the Subordinated Notes Indenture Trustee the Subordinated Notes Warrants, to distribute on a Pro Rata basis to Holders of Allowed Subordinated Notes Claims; and (2) if the Class of Subordinated Notes Claims votes to accept the Plan, the Senior Notes Indenture Trustee shall, prior to distributing any New Common Stock to the Holders of Allowed Senior Notes Claims, transfer to the Subordinated Notes Indenture Trustee 1.5% of the New Common Stock that is distributed to creditors pursuant to the Plan, to distribute on a Pro Rata basis to Holders of Allowed Subordinated Notes Claims.

(iv) *Voting*: Class 5 is Impaired. Holders of Allowed Subordinated Notes Claims are entitled to vote to accept or reject the Plan.

6. Class 6 – Section 510(b) Claims

(i) *Classification*: Class 6 consists of all Section 510(b) Claims.

(ii) *Treatment*: On the Effective Date, all Section 510(b) Claims shall be terminated, cancelled, and extinguished and each Holder of an Allowed Section 510(b) Claim shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Section 510(b) Claim.

(iii) *Voting*: Class 6 is Impaired. Pursuant to Bankruptcy Code section 1126(g), Holders of Section 510(b) Claims are conclusively presumed to reject the Plan.

7. Class 7 – Intercompany Claims

(i) *Classification*: Class 7 consists of all Intercompany Claims.

(ii) *Treatment*: On the Effective Date, except as otherwise provided in the Plan, all Intercompany Claims shall be terminated, cancelled, and extinguished and each Holder of an Intercompany Claim shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Intercompany Claim.

(iii) *Voting*: Class 7 is Impaired. Pursuant to Bankruptcy Code section 1126(g), Holders of Intercompany Claims are conclusively presumed to reject the Plan.

8. Class 8 – Equity Interests

(i) *Classification*: Class 8 consists of all Equity Interests.

(ii) *Treatment*: On the Effective Date, all Equity Interests shall be terminated, cancelled, and extinguished and each Holder of an Equity Interest shall not

be entitled to, and shall not receive or retain any property or interest in property on account of, such Equity Interest.

(iii)  *Voting*: Class 8 is Impaired.  Pursuant to Bankruptcy Code section 1126(g), Holders of Equity Interests are conclusively presumed to reject the Plan.

## C.  Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code section 510(b), or otherwise.  Pursuant to Bankruptcy Code section 510, the Debtor or the Reorganized Debtor, as applicable, reserves the right to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## D.  Confirmation Pursuant to Bankruptcy Code Section 1129(b)

Because certain Classes are deemed to have rejected the Plan, the Debtor will request confirmation of the Plan pursuant to Bankruptcy Code section 1129(b).  The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any related documents, in order to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

## E.  Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily or finally Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class.

## F.  Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.  Sources of Consideration for Monetary Plan Distributions

All consideration necessary to make all monetary payments in accordance with the Plan shall be obtained from the Cash of the Debtor or the Reorganized Debtor, as applicable,

including the Cash Grant if OCI and AAC have accepted the Plan Settlement prior to the Plan Settlement Deadline.

**B.      New Organizational Documents**

The Debtor's organizational documents shall be amended as necessary in order to satisfy the provisions of the Plan and the Bankruptcy Code.  The New Organizational Documents shall include, among other things, pursuant to Bankruptcy Code section 1123(a)(6), a provision prohibiting the issuance of non-voting equity securities.

**C.      Continued Corporate Existence**

In accordance with the laws of the State of Delaware and the New Organizational Documents, after the Effective Date, the Reorganized Debtor shall continue to exist as a separate corporate entity.

**D.      Vesting of Assets in the Reorganized Debtor**

Except as otherwise provided in the Plan, on the Effective Date, all property of the Estate and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens and Claims.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and use, acquire, or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  For the avoidance of doubt, all Causes of Action against the Released Parties belonging to the Debtor which have not been transferred to the Litigation Trust pursuant to Article IV.M shall be deemed released in accordance with Article VIII of the Plan.

**E.      New Common Stock**

Pursuant to the terms set forth in the Plan, on the Effective Date, the Reorganized Debtor shall issue shares of New Common Stock for distribution to Holders of Allowed Claims.  All of the shares of the New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  The Reorganized Debtor will use its commercially reasonable best efforts to list the New Common Stock on a national securities exchange.  The issuance and allocation of the New Common Stock shall be structured to ensure that such issuance qualifies as an exchange subject to IRC section 382(l)(5).  In addition, the New Common Stock shall be subject to trading restrictions, as necessary, to prevent an "ownership change" within the meaning of IRC section 382, from occurring until at least two years following the Effective Date.

**F.      Section 1145 Exemption**

Unless required by provision of applicable law, regulation, order, or rule, as of the Effective Date, the issuance of the New Common Stock, the General Unsecured Warrants and the Subordinated Notes Warrants in accordance with the Plan shall be authorized under Bankruptcy Code section 1145 without further act or action by any Entity.

### G. Cancellation of Securities and Indentures

On the Effective Date, except as otherwise provided in the Plan, all notes, stock, instruments, certificates, indentures, guarantees, and other documents or agreements evidencing the Senior Notes Claims, the Subordinated Notes Claims, and Equity Interests, including, without limitation, the Senior Notes, the Subordinated Notes, and the Indentures, shall be deemed automatically cancelled and shall be of no further force or effect, whether surrendered for cancellation or otherwise, and the obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto shall be discharged. Notwithstanding the foregoing, the Senior Notes, the Subordinated Notes, and the Indentures shall continue in effect solely for the purposes of (i) allowing the Indenture Trustees to receive and distribute New Common Stock and the Subordinated Notes Warrants pursuant to the Plan; (ii) permitting the Indenture Trustees to maintain any Lien or priority rights they may have pursuant to the Indentures against distributions or property held or collected by them for fees and expenses; (iii) permitting, but not requiring, the Indenture Trustees to exercise their rights and obligations relating to the interests of their Holders pursuant to the applicable Indentures; and (iv) permitting the Indenture Trustees to appear in the Chapter 11 Case. The Senior Notes, the Subordinated Notes, and the Indentures shall terminate completely upon completion of the distribution of New Common Stock, the General Unsecured Warrants, and the Subordinated Notes Warrants pursuant to the Plan.

### H. Plan Settlement

#### 1. Consequences of Acceptance by OCI and AAC of the Plan Settlement

OCI and AAC may accept the Plan Settlement until the Plan Settlement Deadline by filing a notice with the Bankruptcy Court prior to the Plan Settlement Deadline specifying (i) that OCI and AAC accept the Plan Settlement, and (ii) whether the Debtor shall cause its Affiliates to enter into TSA Amendment A, TSA Amendment B or TSA Amendment C. If OCI and AAC have accepted the Plan Settlement prior to the Plan Settlement Deadline, entry of the Confirmation Order shall, subject to the occurrence of the Effective Date and effective as of the Effective Date, constitute an order of the Bankruptcy Court approving the Plan Settlement, including the Debtor's assumption of the TSA and entry into the Cost Allocation Agreement and either TSA Amendment A, TSA Amendment B or TSA Amendment C, as applicable. In addition, for the avoidance of doubt, if OCI and AAC have accepted the Plan Settlement prior to the Plan Settlement Deadline, entry of the Confirmation Order shall, subject to the occurrence of the Effective Date and effective as of the Effective Date, constitute an order of the Bankruptcy Court approving the Debtor's unconditional, full, and complete release of AAC, the Segregated Account and OCI from any and all Claims and Causes of Action.

#### 2. Consequences of Rejection by OCI and AAC of the Plan Settlement

If OCI and AAC have not accepted the Plan Settlement prior to the Plan Settlement Deadline, then (i) entry of the Confirmation Order shall, subject to the occurrence of the Effective Date and effective as of the Effective Date, constitute an order of the Bankruptcy Court approving the Debtor's rejection of the TSA; (ii) either (a) prior to the Effective Date, the Debtor may seek to convert the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code pursuant to Bankruptcy Code section 1112; or (b) on the Effective Date or as soon as practicable

thereafter, the Reorganized Debtor shall cause a Deconsolidation Event to occur by transferring more than 20% of its stock in AAC or the economic rights of more than 20% of its stock in AAC to AFG Prime, a third-party, or third-parties unrelated to the Reorganized Debtor (including, without limitation, OCI, another governmental unit, or one or more charitable entities or foundations); (iii) the Reorganized Debtor shall transfer the Litigation Trust Assets to the Litigation Trust pursuant to Article IV.M of the Plan; and (iv) there shall be no releases of AAC, the Segregated Account or OCI.

On the federal income tax return for the taxable year in which the Deconsolidation Event occurs, the Reorganized Debtor will, in its sole discretion, (i) elect, under Treas. Reg. § 1.1502-36(d)(6), to reattribute up to the maximum amount of AAC's NOLs to the Reorganized Debtor; or (ii) take a worthless stock loss with respect to the Reorganized Debtor's stock in AAC to the maximum extent permitted under the IRC and applicable regulations.

## I.      Directors and Officers of the Reorganized Debtor

On the Effective Date the term of the current members of the Debtor's board of directors shall expire. On and after the Effective Date, the existing officers of the Debtor shall remain in place in their current capacities as officers of the Reorganized Debtor, subject to the ordinary rights and powers of the New Board to remove or replace them.  The New Board shall consist of the Reorganized Debtor's Chief Executive Officer and four (4) additional directors, all of whom shall serve on an interim basis until such time that the Holders of the New Common Stock elect four new directors.  The interim directors shall be appointed as follows: one (1) director shall be appointed by the Informal Group and three (3) directors shall be appointed by the Committee; *provided*, *however*, that if members of the Informal Group hold 50% or more of the Senior Notes Claims on the Confirmation Date, the Informal Group shall appoint two (2) directors and the Committee shall appoint two (2) directors.  The identity of the members of the New Board and the nature and compensation of each of its members who is an "insider" under Bankruptcy Code section 101(31) shall be disclosed at or prior to the Confirmation Hearing.

## J.      Corporate Action

Except as otherwise provided in the Plan, each of the matters provided for by the Plan involving corporate or related actions to be taken by or required of the Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Equity Interests, directors of the Debtor, or any other Entity.  On or prior to the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, securities, instruments, or other documents contemplated by the Plan, or necessary or desirable to effect the transactions contemplated by the Plan, in the name of and on behalf of the Reorganized Debtor, including New Organizational Documents and any and all other agreements, securities, instruments, or other documents relating to such documents.  Notwithstanding any requirements under nonbankruptcy law, the authorizations and approvals contemplated by this provision shall be effective.

## K.     Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtor and the officers and members of the New Board are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the New Common Stock in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents, except for those expressly required by the Plan.

## L.     Exemption from Certain Taxes and Fees

Pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant to the Plan shall not be subject to any stamp, real estate transfer, mortgage reporting, sales, use tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

## M.     Litigation Trust

If OCI and AAC have not accepted the Plan Settlement prior to the Plan Settlement Deadline, on the Effective Date, the Reorganized Debtor and the Litigation Trustee shall enter into the Litigation Trust Agreement, the Reorganized Debtor shall take all other steps necessary to establish the Litigation Trust, and the Litigation Trust Assets shall be transferred to the Litigation Trust. The sole purpose of the Litigation Trust shall be to prosecute the Causes of Action transferred thereto for the benefit of the Reorganized Debtor and to distribute the proceeds thereof in accordance with the terms of the Litigation Trust Agreement. The Litigation Trustee will, subject to the terms of the Litigation Trust Agreement, have full power, authority, and standing to prosecute, compromise, or otherwise resolve the Causes of Action transferred to the Litigation Trust and the Reorganized Debtor will not be subject to any counterclaims with respect to any such Causes of Action.

## ARTICLE V.

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

## A.     Assumption or Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided in the Plan, each of the Debtor's executory contracts and unexpired Leases shall be deemed rejected as of the Effective Date, unless such executory contract or unexpired lease (i) was assumed or rejected previously by the Debtor; (ii) previously expired or terminated pursuant to its terms; (iii) is the subject of a motion to assume or reject Filed on or before the Effective Date; or (iv) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases. Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the approval by the Bankruptcy Court of the

assumptions or rejections of executory contracts and unexpired leases as set forth in the Plan. Except as otherwise provided in the Plan, all assumptions or rejections of executory contracts and unexpired leases pursuant to the Plan are effective as of the Effective Date. Notwithstanding anything to the contrary in the Plan, the Debtor reserves the right to amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time before the Effective Date.

## B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any monetary defaults under each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash on the Effective Date or as soon as practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree. At least twenty-one (21) days before the Confirmation Hearing, the Debtor shall distribute, or cause to be distributed, to the appropriate third parties, notices of proposed assumption of executory contracts and unexpired leases and proposed amounts of Cure Claims, which notices shall be in a format reasonably acceptable to the Committee and shall include procedures for objecting to proposed assumptions of executory contracts and unexpired leases and any amounts of Cure Claims to be paid in connection therewith. Any objection by a counterparty to an executory contract or unexpired lease to a proposed assumption or related cure amount must be Filed, served, and actually received by counsel to the Debtor and the Committee at least seven (7) days before the Confirmation Hearing. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and cure amount. In the event of a dispute regarding (i) the amount of any payments to cure such a default, (ii) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance," within the meaning of Bankruptcy Code section 365, under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption.

## C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, including any executory contracts or unexpired leases rejected or deemed rejected under the Plan, must be Filed in accordance with the procedures set forth in the Bar Date Order within thirty (30) days after the date of an order approving such rejection, including the Confirmation Order, is entered. Any Claims arising from the rejection of an executory contract or unexpired lease not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Reorganized Debtor, or their assets or properties without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's executory contracts or unexpired

leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.3 of the Plan. The deadline to object to Claims arising from the rejection of executory contracts or unexpired leases, if any, shall be ninety (90) days following the date on which such Proof of Claim was Filed.

## D. Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request, pursuant to Bankruptcy Code section 365(d)(4), to extend the deadline for assuming or rejecting executory contracts and unexpired leases.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

## A. Record Date for Distributions

As of the Distribution Record Date, the transfer registers for each Class of Claims or Equity Interests, as maintained by the Debtor or its agents, shall be deemed closed and there shall be no further changes made to reflect any new record holders of any Claims or Equity Interests. The Debtor shall have no obligation to recognize any transfer of Claims or Equity Interests occurring on or after the Distribution Record Date.

## B. Timing and Calculation of Amounts to be Distributed

Except as otherwise provided in the Plan, on the Effective Date or as soon as practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class; *provided*, *however*, that any Holder of Allowed Senior Notes Claims or Allowed Subordinated Notes Claims that does not comply with the Trading Order shall only receive distributions of New Common Stock to the extent set forth in the Trading Order. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made in accordance with the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

## C. Disbursing Agent

On the Effective Date or as soon as practicable thereafter, all distributions under the Plan shall be made by the Reorganized Debtor as Disbursing Agent or such other Entity designated by the Reorganized Debtor as a Disbursing Agent. Except as otherwise ordered by the Bankruptcy

Court, a Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

**D.      Rights and Powers of Disbursing Agent**

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, securities, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated by the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

**E.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1.      Delivery of Distributions

Except as otherwise provided in the Plan, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such distribution or as set forth in any Proof of Claim Filed by such Holder; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.  Distributions to Holders of Senior Notes Claims shall be made to the Senior Notes Indenture Trustee for the benefit of the respective Holders of Senior Notes Claims, and shall be deemed completed when made to the Senior Notes Indenture Trustee.

2.      Minimum; De Minimis Distributions

The Disbursing Agent shall not be required to make partial distributions or payments of fractions of New Common Stock and such fractions shall be deemed to be zero.  The total number of authorized shares of New Common Stock to be distributed pursuant to the Plan shall be adjusted, as necessary, to account for the foregoing.  No Cash payment of less than $50 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

3.     <u>Undeliverable Distributions and Unclaimed Property</u>

(i)     Failure to Claim Undeliverable Distributions

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) at the expiration of six (6) months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

(ii)     Failure to Present Checks

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within ninety (90) days after the issuance of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Debtor, the Reorganized Debtor, or their assets and properties.

**F.**     **Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed upon it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. The Disbursing Agent has the right, but not the obligation, not to make a distribution until such Holder has made arrangements satisfactory to the Disbursing Agent for payment of any such withholding tax obligations and, if the Disbursing Agent fails to withhold with respect to any such Holder's distribution, and is later held liable for the amount of such withholding, the Holder shall reimburse the Disbursing Agent. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Disbursing Agent may require, as a condition to the receipt of a distribution, that the Holder complete the appropriate Form W-8 or Form W-9, as applicable to each Holder. If the Holder

fails to comply with such a request within six months, such distribution shall be deemed an unclaimed distribution. Finally, the Disbursing Agent reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**G.      Allocations**

Distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for federal income tax purposes) of such Claims, and then, to the extent the consideration exceeds the principal amount of such Claims, to any portion of such Claims for accrued but unpaid interest.

**H.      Setoffs and Recoupment**

The Debtor or the Reorganized Debtor may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the Allowance of any Claim shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such Claim it may have against the Holder of such Claim.

**I.      Claims Paid or Payable by Third Parties**

        1.      Claims Paid by Third Parties

The Debtor, on or prior to the Effective Date, or the Reorganized Debtor, after the Effective Date, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice, action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Debtor or the Reorganized Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or the Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim.

        2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE VII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A.    Resolution of Disputed Claims

1.    <u>Allowance of Claims</u>

On or after the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date.  Except as otherwise provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date, including, without limitation, the Confirmation Order, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed (i) under the Plan or the Bankruptcy Code or (ii) by Final Order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

2.    <u>No Distribution Pending Allowance</u>

Except as otherwise provided in the Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.  To the extent a Disputed Claim becomes an Allowed Claim, in accordance with the provisions of the Plan, distributions shall be made to the Holder of such Allowed Claim, without interest.

3.    <u>Disputed Claims Reserve</u>

(i)    Disputed Claims Reserve

On the Effective Date or as soon as practicable thereafter, the Debtor or the Reorganized Debtor, as applicable, shall deposit into the Disputed Claims Reserve the amount of Cash and New Common Stock that would have been distributed to Holders of all Disputed Claims as if such Disputed Claims had been Allowed on the Effective Date, with the amount of such Allowed Claims to be determined, solely for the purpose of establishing reserves and for maximum distribution purposes, to be the lesser of (i) the asserted amount of the Disputed Claim Filed with the Bankruptcy Court, or if no Proof of Claim was Filed, listed by the Debtor in the Schedules, (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to Bankruptcy Code section 502(c), and (iii) the amount otherwise agreed to by the Debtor or the Reorganized Debtor, as applicable, and the Holder of such Disputed Claim for reserve purposes.

(ii)    Distribution of Excess Amounts in the Disputed Claims Reserve

When all Disputed Claims are resolved and either become Allowed or are disallowed by Final Order, to the extent Cash or New Common Stock remains in the Disputed Claims Reserve after all Holders of Disputed Claims that have become Allowed have been paid the full amount they are entitled to pursuant to the treatment set forth for the appropriate Class under the Plan, then such remaining Cash and New Common Stock shall vest in the Reorganized Debtor.

4. Prosecution of Objections to Claims

The Debtor, prior to and on the Effective Date, or the Reorganized Debtor, after the Effective Date, shall have the exclusive authority to File objections to Claims or settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. From and after the Effective Date, the Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice, action, order, or approval of the Bankruptcy Court.

5. Claims Estimation

The Debtor, prior to and on the Effective Date, or the Reorganized Debtor, after the Effective Date, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Bankruptcy Code section 502(c) regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.

6. Expungement or Adjustment of Claims Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Debtor or the Reorganized Debtor, as applicable, and any Claim that has been amended may be adjusted thereon by the Debtor or the Reorganized Debtor, in both cases without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

7. Deadline to File Claims Objections

Any objections to Claims shall be Filed by no later than the Claims Objection Bar Date.

**B.      Disallowance of Claims**

Any Claims held by an Entity from which property is recoverable under Bankruptcy Code sections 542, 543, 550, or 553, or that is a transferee of a transfer avoidable under Bankruptcy Code section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), shall be deemed disallowed pursuant to Bankruptcy Code section 502(d), and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, by that Entity have been turned over or paid by such Entity to the Debtor, the Reorganized Debtor, or the Litigation Trustee.

EXCEPT AS OTHERWISE AGREED BY THE DEBTOR OR THE REORGANIZED DEBTOR, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE

EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

## C. Amendments to Claims

On or after the Effective Date, a Claim may not be Filed or amended without prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such new or amended Claim Filed without such prior authorization shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VIII.

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A. Discharge of Claims and Termination of Equity Interests

Pursuant to and to the fullest extent permitted by Bankruptcy Code section 1141(d), and except as otherwise provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Commencement Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in the Debtor, the Reorganized Debtor, or their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (i) a Proof of Claim or Equity Interest based upon such Claim, debt, right, or Equity Interest is Filed or deemed Filed pursuant to Bankruptcy Code section 501; (ii) a Claim or Equity Interest based upon such Claim, debt, right, or Equity Interest is Allowed pursuant to Bankruptcy Code section 502; or (iii) the Holder of such a Claim or Equity Interest has accepted the Plan. Any default by the Debtor or its Affiliates with respect to any Claim or Equity Interest that existed immediately before or on account of the Filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

## B. Injunction

Except as otherwise provided in the Plan, from and after the Effective Date, all Entities that have held, hold, or may hold Claims against or Equity Interests in the Debtor or the Estate are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, or the Estate: (i) commencing or continuing in any manner any action or

other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Equity Interests; (iii) creating, perfecting, or enforcing any Lien of any kind against such Entities or the property or estates of such Entities on account of or in connection with or with respect to any such Claims or Equity Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Equity Interests, unless such Holder has Filed a motion requesting the right to perform such setoff, subrogation, or recoupment on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff, subrogation, or recoupment pursuant to Bankruptcy Code section 553 or otherwise; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.

## C.      Exculpation

None of the Released Parties shall have or incur any liability to any holder of any Claim or Equity Interest for any act or omission in connection with or arising out of the Debtor's restructuring, including, without limitation, the negotiation and execution of the Plan, the Chapter 11 Case, the Disclosure Statement, the solicitation of votes for and the pursuit of the Plan, the Consummation of the Plan, or the administration of the Plan or the Cash, New Common Stock, Subordinated Notes Warrants and General Unsecured Warrants to be distributed under the Plan, and further including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto, and all prepetition activities leading to the promulgation and confirmation of the Plan; *provided*, *however*, that the foregoing shall not apply to any act which constitutes a bankruptcy crime under title 18 of the United States Code.

## D.      General Releases by the Debtor

For good and valuable consideration, including the facilitation of the Debtor's expeditious reorganization, on and after the Effective Date, the Released Parties shall be released and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all Claims and Causes of Action of any nature whatsoever, including any derivative Claims asserted by or on behalf of the Debtor, based upon or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; *provided*, *however*, that the foregoing shall not apply to (i) Causes of Action against AAC, the Segregated Account and OCI transferred to the Litigation Trust pursuant to Article IV.M of the Plan; and (ii) any act which constitutes a bankruptcy crime under title 18 of the United States Code.

## E.      General Releases by Holders of Claims and Equity Interests

To the extent permitted by applicable law, as of the Effective Date, each Entity that has held, holds, or may hold a Claim or an Equity Interest, as applicable, in consideration for the obligations of the Debtor under the Plan, the Plan distributions, and other agreements, securities, instruments, or other documents executed or delivered in connection with the Plan, shall be

deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Claims and Causes of Action of any nature whatsoever, including any derivative Claims asserted by or on behalf of the Debtor, that such entity would have been legally entitled to assert based upon or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; *provided, however*, that the foregoing shall not apply to (i) Causes of Action against AAC, the Segregated Account and OCI transferred to the Litigation Trust pursuant to Article IV.M of the Plan; (ii) any act which constitutes a bankruptcy crime under title 18 of the United States Code; and (iii) any obligations of the Reorganized Debtor pursuant to the Plan. Notwithstanding anything to the contrary in the Plan, One State Street, LLC shall continue to be entitled to the benefits set forth in the OSS Settlement Agreement.

**F.      Releases Required Pursuant to the Stipulation of Settlement**

In accordance with the Stipulation of Settlement, the Plan includes the following releases:

1.      To the fullest extent permitted by applicable law, on the Effective Date, all Persons or Entities, including, but not limited, to the Ambac Entities and any shareholder or creditor of any of the Ambac Entities (including any other Person or Entity purportedly acting derivatively on behalf of the Ambac Entities) shall be permanently barred and enjoined from instituting, prosecuting, or continuing to prosecute any and all manner of Claims, actions, Causes of Actions, suits, controversies, agreements, costs, damages, judgments, and demands whatsoever, known or Unknown (as defined in the Stipulation of Settlement), suspected or unsuspected, accrued or unaccrued, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, contract, or in equity, against any or all of the Individual Defendants and any or all of the current or former officers, directors, or employees of any Ambac Entity (i) that were, could have been, might have been, or might be in the future asserted in any of the Securities Actions or any of the Derivative Actions; (ii) in connection with, arising out of, related to, or based upon, in whole or in part, directly or indirectly, any action or omission or failure to act within the Class Period or relevant periods specified in any of the Derivative Actions by any of the Individual Defendants or any of the current or former officers, directors, or employees of any Ambac Entity relating to any Ambac Entity or in his or her capacity as an officer, director, or employee of any Ambac Entity; or (iii) that allege, arise out of, or are based upon or attributable to any fact, action, omission, or failure to act that is alleged in any of the Securities Actions or the Derivative Actions or related to any fact, action, omission, or failure to act alleged in the Securities Actions or the Derivative Actions.

2.      On the Effective Date, the Reorganized Debtor, on behalf of itself and (to the fullest extent of its power to do so) all Ambac Entities and (to the fullest extent of their power to do so) any shareholder, creditor, or other Person or Entity purporting to sue on behalf of or in the right of any of the Ambac Entities, shall be deemed to fully release any and all manner of Claims, actions, Causes of Action, suits, controversies, agreements, costs, damages, judgments, and demands whatsoever, known or Unknown (as defined in the Stipulation of Settlement), suspected or unsuspected, accrued or unaccrued, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, contract, or in equity, against any or all of the Individual

Defendants and any or all of the current or former officers, directors, or employees of any Ambac Entity (i) that were, could have been, might have been, or might be in the future asserted in any of the Securities Actions or any of the Derivative Actions; (ii) in connection with, arising out of, related to, or based upon, in whole or in part, directly or indirectly, any action or omission or failure to act within the Class Period or relevant periods specified in any of the Derivative Actions by any of the Individual Defendants or any of the current or former officers, directors, or employees of any Ambac Entity relating to any Ambac Entity or in his or her capacity as an officer, director, or employee of any Ambac Entity; or (iii) that allege, arise out of, or are based upon or attributable to any fact, action, omission, or failure to act that is alleged in any of the Securities Actions or the Derivative Actions or related to any fact, action, omission, or failure to act alleged in the Securities Actions or the Derivative Actions.

## G.      Release of Liens

Except as otherwise provided in the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, and, in the case of a Class 2 Secured Claim, satisfaction in full of the portion of such Claim that is Allowed as of the Effective Date, all mortgages, deeds, trusts, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds, trusts, Liens, pledges, or other security interests shall revert to the Reorganized Debtor.

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

## A.      Conditions Precedent to Confirmation

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to Article IX.C of the Plan: (i) the Bankruptcy Court shall have approved the Disclosure Statement with respect to the Plan; (ii) the Bankruptcy Court shall have approved any plan supplement filed with respect to the Plan; and (iii) the proposed Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor.

## B.      Conditions Precedent to Consummation

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to Article IX.C of the Plan: (i) the Confirmation Order shall have become a Final Order; (ii) the New Organizational Documents shall have been effected or executed and delivered to the required parties; (iii) the Debtor or the Reorganized Debtor, as applicable, shall have executed and delivered all documents necessary to effectuate the issuance of the New Common Stock, Subordinated Notes Warrants and General Unsecured Warrants; (iv) all authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained; (v) the District Court shall have entered a Final Order certifying the Settlement Class and approving the Stipulation of Settlement; (vi) the Derivative Actions shall have been dismissed; (vii) the Bankruptcy Court

shall have approved the Debtor's entry into the Stipulation of Settlement and the Insurer Agreement; (viii) the IRS Dispute shall have been resolved in a manner satisfactory to the Debtor and the Committee; (ix) the Bankruptcy Court shall have entered an order estimating the IRS Claims at $0.00 for all purposes or such other amount that is acceptable to the Debtor and the Committee; (x) the aggregate face amount of Allowed and Disputed General Unsecured Claims shall be less than $50,000,000; (xi) if OCI and AAC have accepted the Plan Settlement prior to the Plan Settlement Deadline, the Rehabilitation Court shall have approved the transactions contemplated in the Plan within sixty (60) days of the filing of the Plan; (xii) if OCI and AAC have accepted the Plan Settlement prior to the Plan Settlement Deadline, (a) the Cash Grant will have been paid and (b) one of TSA Amendment A, TSA Amendment B and TSA Amendment C will have been executed; (xiii) if OCI and AAC have not accepted the Plan Settlement prior to the Plan Settlement Deadline, (a) the Bankruptcy Court shall have approved the identity and appointment of the Litigation Trustee and the form of the Litigation Trust Agreement and determined that the Litigation Trustee is authorized to take the actions contemplated by the Litigation Trust Agreement, (b) the Debtor and the Litigation Trustee shall have executed the Litigation Trust Agreement, and (c) the Litigation Trust Assets shall have been transferred to the Litigation Trust; and (xiv) all other actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws.

## C.     Waiver of Conditions

Upon notice to the Informal Group and the Committee, the Debtor shall have the right to waive one or more of the conditions to Confirmation or Consummation of the Plan set forth in Article IX of the Plan at any time without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## D.     Effect of Nonoccurrence of Conditions

If each of the conditions to Confirmation and Consummation has not been satisfied or duly waived on or before the date that is 180 days after the Confirmation Date, or by such later date as determined by the Debtor with the consent of the Committee, which shall not be unreasonably withheld, the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this provision, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (ii) prejudice in any manner the rights of the Debtor, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders, or any other Entity in any respect.

## ARTICLE X.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.      Modification and Amendments

The Debtor may amend, modify, or supplement the Plan pursuant to Bankruptcy Code section1 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date, but prior to Consummation of the Plan, the Debtor may, with the consent of the Committee, which shall not be unreasonably withheld, and upon consultation with the Informal Group, amend, modify, or supplement the Plan without further order of the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order.

### B.      Effect of Confirmation on Modifications

Pursuant to Bankruptcy Code section 1127(a), entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C.      Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity, prejudice in any manner the rights of the Debtor or any other Entity, or constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, and the Plan as legally permissible, including, without limitation, jurisdiction to:

1.  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim, including Claims of a Professional for services rendered to the Debtor or any Committee, and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

2.  decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.  decide and resolve all matters related to the reasonableness of the Indenture Trustee Fees and the Informal Group Fees;

4.  resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is party or with respect to which the Debtor may be liable, and the hearing, determination, and, if necessary, liquidation of any Claims arising therefrom, including Cure Claims pursuant to Bankruptcy Code section 365; (ii) any potential contractual obligation under any executory contract or unexpired lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

5.  ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

6.  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

7.  adjudicate, decide, or resolve any and all matters related to Causes of Action, including, but not limited to, any Causes of Action against AAC, the Segregated Account or OCI transferred to the Litigation Trust;

8.  adjudicate, decide, or resolve any and all matters related to Bankruptcy Code sections 1141 and 1145;

9.  enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents, including the Litigation Trust Agreement, created in connection with the Plan or the Disclosure Statement;

10. enter and enforce any order pursuant to Bankruptcy Code sections 363, 1123, or 1146(a) for the sale of property;

11.    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations in connection with the Plan, including, without limitation, any dispute related to amendments to the TSA or the Plan Settlement, including, but not limited to, any cases, controversies, suits, disputes, or Causes of Action by or against AAC, the Segregated Account or OCI;

12.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity, including, but not limited to, AAC, the Segregated Account or OCI, with Consummation or enforcement of the Plan;

13.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.    enter an order or final decree concluding or closing the Chapter 11 Case;

16.    adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.    consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.    determine requests for the payment of Administrative Claims or Claims entitled to priority pursuant to Bankruptcy Code section 507;

19.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, securities, instruments, or other documents, including the Litigation Trust Agreement, executed or delivered in connection with the Plan, and further including any disputes regarding the Debtor's right to cause a Deconsolidation Event as set forth in Article IV.H.2 herein without the approval of OCI;

20.    hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

21.    hear and determine all matters relating to the Litigation Trust;

22.    hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge, including any dispute relating to any liability arising out of

the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

23. enforce all orders previously entered by the Bankruptcy Court; and

24. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

### A. Immediate Binding Effect

Subject to Article IX.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(g), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

### B. Additional Documents

On or before the Effective Date, the Debtor may File with the Bankruptcy Court any and all agreements and other documents that may be necessary or appropriate in order to effectuate and further evidence the terms and conditions of the Plan.

### C. Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at a hearing pursuant to Bankruptcy Code section 1128, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

### D. Dissolution of Committee

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further authority, duties obligations and responsibilities in the Chapter 11 Case and under the Bankruptcy Code; *provided, however*, that, following the Effective Date, the Committee shall (i) continue to have standing and a right to be heard with respect to (a) Claims and/or applications for compensation by Professionals and requests for allowance of Administrative Expenses, including, but not limited to, filing applications for Accrued Professional Compensation in accordance with Article II.C of the Plan; (b) any appeals of the Confirmation Order that remain pending as of the Effective Date; and (ii) continue to respond to creditor inquiries for one hundred twenty (120) days following the Effective Date.

## E.    Reservation of Rights

Except as otherwise provided in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

## F.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## G.    Service of Documents

All notices, requests and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Ambac Financial Group, Inc.
One State Street Plaza
Attn: General Counsel
New York, NY 10004

*and*

Dewey & LeBoeuf LLP
Counsel for the Debtor
1301 Avenue of the Americas
Attn: Peter A. Ivanick, Esq., and Allison H. Weiss, Esq.
New York, NY 10019

With copies to:

Morrison & Foerster LLP
Counsel for the Committee
1290 Avenue of the Americas
Attn: Anthony Princi, Esq.
New York, NY 10104

*and*

Akin Gump Strauss Hauer & Feld, LLP
Counsel for the Informal Group
1333 New Hampshire Ave, N.W.
Attn: James R. Savin, Esq.
Washington, D.C. 20036

After the Effective Date, the Reorganized Debtor has authority to send a notice to Entities that in order to continue to receive documents pursuant to Bankruptcy Rule 2002, they must File a renewed request to receive documents with the Bankruptcy Court. After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H.     Further Assurances**

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions pursuant to the Plan, and all other Entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**I.     Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to Bankruptcy Code sections 105 or 362 or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan, the Confirmation Order and any order of the Bankruptcy Court approving the Stipulation of Settlement shall remain in full force and effect in accordance with their terms.

**J.     Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**K.     Exhibits and Related Documents**

All exhibits and documents Filed in relation to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. After any exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Debtor's restructuring website, http://www.kccllc.net/ambac, or the Bankruptcy Court's website, http://www.nys.uscourts.gov (a PACER login and password are required to access documents on the Bankruptcy Court's website).

## L.    Severability of Plan Provisions

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

## M.    Closing of Chapter 11 Case

Promptly after the full administration of the Chapter 11 Case, the Reorganized Debtor shall File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

## N.    Waiver or Estoppel Conflicts

Each Holder of a Claim or Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated, by virtue of an agreement made with the Debtor or its counsel, the Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

## O.    Conflicts

Except as set forth in the Plan or unless otherwise ordered by the Bankruptcy Court, to the extent that the Disclosure Statement, any order of the Bankruptcy Court (other than the Confirmation Order), or any exhibit to the Plan or document executed or delivered in connection with the Plan is inconsistent with the terms of the Plan, the terms of the Plan shall control; *provided*, *however*, that to the extent the Stipulation of Settlement or any order of the Bankruptcy Court approving the Stipulation of Settlement may be inconsistent with the Plan, the terms of the Stipulation of Settlement or the order of the Bankruptcy Court approving the Stipulation of Settlement shall control.

Dated: July 6, 2011                    Respectfully Submitted,
      New York, New York

Ambac Financial Group, Inc.

By: Diana Adams
Title: Senior Managing Director

<u>**EXHIBIT A**</u>

**Cost Allocation Agreement**

**TO BE PROVIDED**

# EXHIBIT B

## General Unsecured Warrant Agreement

## TO BE PROVIDED

## EXHIBIT C

## Litigation Trust Agreement

## TO BE PROVIDED

## EXHIBIT D

**New By-Laws**


**TO BE PROVIDED**

## <u>EXHIBIT E</u>

## New Certificate of Incorporation

## TO BE PROVIDED

## EXHIBIT F

### Schedule of Assumed Executory Contracts and Unexpired Leases

**TO BE PROVIDED**

## EXHIBIT G

## Subordinated Notes Warrant Agreement

## TO BE PROVIDED

## EXHIBIT H

**TSA Amendment A**



**TO BE PROVIDED**

## EXHIBIT I

## TSA Amendment B

## TO BE PROVIDED

## EXHIBIT J

**TSA Amendment C**

**TO BE PROVIDED**