Stephen J. Fearon, Jr.
Caitlin Duffy
Garry T. Stevens, Jr.
SQUITIERI & FEARON, LLP
32 East 57th St., 12th Floor
New York, New York 10022
Tel:    (212) 421-6492
Fax:   (212) 421-6553

*Attorneys for Karthikeyan V. Veera*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* <br><br> AMBAC FINANCIAL GROUP, INC., <br><br> Debtor. | Chapter 11 <br><br> Case No.: 10-15973 (SCC) |
| AMBAC FINANCIAL GROUP, INC., <br><br> Plaintiff, <br> v. <br><br> KARTHIKEYAN V. VEERA, <br><br> Defendant. | Adv. Pro. No.: 11-1265 (SCC) |

**KARTHIKEYAN V. VEERA'S MOTION FOR RELIEF FROM THE STAY OR, ALTERNATIVELY, PARTIAL RELIEF FROM THE STAY TO COMPLETE LIMITED <u>DISCOVERY IN THE ERISA CLASS ACTION</u>**

# PRELIMINARY STATMENT

Mr. Veera is the plaintiff and proposed class representative in an ERISA class action[1] that he brought on behalf of participants in the Ambac Financial Group, Inc. Savings and Investment Plan (the "SIP") who lost significant retirement assets by investing in Ambac stock through the SIP. He and the other participants in the proposed class had their retirement assets decimated by the collapse in Ambac's stock price and are seeking to hold the fiduciaries of the SIP liable for those losses.

Although the Confidentiality Order in the ERISA Action limits what Mr. Veera can repeat here about the evidence he has gathered so far, Mr. Veera will prove at trial that the fiduciaries of the Plan knew that Ambac was collapsing but continued to offer and invest in Ambac stock in the SIP. The company was writing no new business and was facing massive losses on its guarantees. As the CEO of the company would later describe, during this time that participants were investing their retirement assets in Ambac stock, "the wings came off" of Ambac[2] but the fiduciaries continued to offer Ambac stock as a retirement investment and stepped-up their campaign of misinformation. Some of the fiduciaries sold their own Ambac stock at inflated prices while others either left the company before the truth was revealed, or dug in and misrepresented the company's viability. For example, Mr. Veera will show that before Ambac collapsed and while the fiduciaries were offering Ambac stock as a retirement investment, William McKinnon, the company's Chief Risk Officer and a fiduciary of the SIP, sold large amounts of his own stock and then abruptly left the company before its losses became

---

[1] *Veera v. Ambac Plan Administrative Committee, et al.*, No. 10-cv-4191 (S.D.N.Y.) (Judge Harold Baer, Jr.) (the "ERISA Action").
[2] *See* Video, Michael Callen, *US Credit and Liquidity Crisis*, Dean's Lecture Series, 2008 Hass School of Business UC Berkley (Oct. 29, 2008) *available at* http://www.youtube.com/watch?v=80b-OG0gWCc.

public, as did the Chairman of the Board (Robert Genader) and one of Ambac's directors, Grant Gregory.

Of course, the defendants in the ERISA Action want to avoid discovery and delay the trial. Working with the Debtor's counsel, in March they convinced this Court to extend the Bankruptcy Stay to the ERISA Action in order to allow Ambac uninterrupted time to prepare and file its proposed plan of reorganization. *See* Doc. No. 226 at 16-18 (March 4, 2011 Hearing Transcript) (noting that the stay should apply to the ERISA Action case so that the Debtor could focus its efforts on negotiating and proposing a plan of reorganization). When this Court extended the Bankruptcy Stay to Mr. Veera's action, it allowed him to obtain some limited document discovery during the exclusivity period and depose one non-debtor defendant who was no longer employed by Ambac (Defendant Gregg Bienstock, a fiduciary to the SIP and former Ambac employee).

The March 7, 2011 Order staying the ERISA Action also provided that after the Debtor's exclusivity period ended on July 6, 2011, the parties should revisit the issue of the stay in order to "look and listen" to determine where the parties were and how further relief from the stay might impact the successful reorganization of Ambac. *See* (Doc. No. 226, Mar. 4, 2011 Tr. at 21.) The Court directed counsel for Mr. Veera and the Debtor to advise the Court, at the next Omnibus Hearing after the exclusivity period[3], what each side's position is as to whether "there is a need for the Court to consider granting Veera further relief from the stay." March 7, 2011 Order at 2-3.

The Debtor (which is not a defendant in the ERISA Action) filed its Plan of

---

[3] The Debtor and Mr. Veera agree that the parties should be allowed to proceed with the mediation that is scheduled for September 2, 2011 in the ERISA Action. To the extent that there is any question about whether the stay would allow the parties to mediate, Mr. Veera respectfully requests that the Court allow the mediation to proceed in the ERISA Action.

Reorganization on July 6, 2011 (Doc. No. 384) and Mr. Veera is now filing this memorandum to respectfully urge the Court to lift the stay so that Mr. Veera may proceed to gather the evidence he needs to properly prepare his case against the non-debtor fiduciary defendants in the ERISA Action.

I.  NOW THAT THE DEBTOR HAS FILED ITS PLAN OF REORGANIZATION THE COURT SHOULD ALLOW MR. VEERA TO CONTINUE PURSUING HIS ERISA CLAIMS FOR THE SIP AND ITS PARTICIPANTS

1. The primary reason that this Court extended the section 362(a) stay to the ERISA Action was to provide "breathing room" for the Debtor to focus on negotiating its Plan during the exclusivity period. (Debtor's Br. at 5) (Adv. Pr. Doc. No. 05). In originally arguing that the Court should extend the stay to the ERISA Action, the Debtor had suggested that litigation would distract certain in-house attorneys and other key personnel at Ambac from their role in preparing the proposed Plan. The Debtor's argument was that if Ambac was forced to contend with litigation, it could not focus on its Plan of Reorganization.

2. As this Court is well aware, the Debtor's exclusivity period ended on July 6, 2011 and the Debtor filed its proposed Plan of Reorganization. Accordingly, the Debtor is beyond the "critical juncture" that the Debtor originally relied upon to argue for the stay.   (Doyle Decl. ¶ 18; Tr. at 26-7). As a result, there is no need to stay the ERISA Action any longer.

3. Any claim by Ambac that litigation would distract it from reorganizing is especially suspect because Ambac (as Ambac Assurance) is now vigorously litigating at least three lawsuits against some of the banks that securitized the same toxic deals that are at issue in the ERISA Action. For example, Ambac Assurance is actively litigating: *Ambac Assurance Corporation v. EMC Mortgage Corp. and JP Morgan Securities Inc. (f/k/a Bear, Stearns & Co.)*, Index No. 650421/11 (N.Y.Sup.Ct.), and Case  No. 08 Civ. 9464 (S.D.N.Y.); *Ambac Assurance Corporation v. Countrywide*, Index No. 651612/10 (N.Y. Sup. Ct.); and *Ambac Assurance Corporation v. DLJ and Credit Suisse*,

Index No. 600070/2010 (N.Y. Sup. Ct.), each of which involves deals that are at issue in the ERISA Action.

4. In the *EMC* case alone there have been more than 45 depositions so far, including at least 15 party witnesses and 30 non-party witnesses. If Ambac's personnel can actively litigate cases like the claims against EMC, Countrywide and Credit Suisse, one wonders whether the Debtor truly sought to stay the ERISA action "to avoid distraction" or whether it sought the stay simply to delay the day of reckoning for the fiduciaries in the ERISA Action. Either way, now that the Debtor has filed its Plan of Reorganization, Mr. Veera should be free to once again pursue his claims.

5. Lifting the stay is appropriate under the factors that the Second Circuit established in *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). In *Sonnax*, the Second Circuit enunciated twelve factors[4] to determine the appropriateness of lifting a stay to allow a case to proceed in another forum. Not all factors may be relevant to a particular action, and courts need not assign them equal weight. *Id*. at 1286. Here, the relevant *Sonnax* factors favor relieving Mr. Veera from the stay.

6. In particular, the Debtor is not a party to the ERISA Action, which strongly supports lifting the stay. The Debtor should not be allowed to stall Mr. Veera's litigation, simply because it is a custodian of certain discovery. "Actions which are only remotely related to the

---

[4] These twelve factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) what impact the stay has on the parties and the balance of harms. *Id.* at 1286.

case under title 11 or which involve the rights of third parties often will be permitted to proceed in another forum." *Sonnax*, 907 F.2d at 1286 (citing *2 Collier on Bankruptcy* ¶ 362.07(3) at 362-65).

7.  Balancing the harm of lifting the stay also favors Mr. Veera because the Debtor has now filed its Plan of Reorganization. The ERISA Action simply does not threaten the Debtor's reorganization. Any threat to the Debtor's reorganization will come from deficiencies in the proposed Plan or from unresolvable problems with the IRS, the Wisconsin OCI, or other creditors, not from Mr. Veera being allowed to litigate his case. Conversely, maintaining the stay in the ERISA Action will unfairly delay Mr. Veera and the class again from pursuing their claims and moving their case to trial. The stay has already prevented Mr. Veera from completing much of the discovery that he sought and it scuttled the schedule set by Judge Baer for completing discovery in the case. That delay is tangible and real. The Debtor, on the other hand, can only speculate and hypothesize about any harm to it that would result from lifting the stay. It would be unfair to delay Mr. Veera and the class further based upon speculation, particularly where the Debtor has already had the benefit of the stay and has already proposed its Plan of Reorganization. Therefore, the balance favors lifting the stay.

8.  The ERISA Action is in a procedurally advanced state that warrants lifting the stay. Prior to the stay, the parties to the ERISA Action were proceeding with discovery and Mr. Veera's Complaint had survived the non-debtor defendants' motion to dismiss and their attempt to certify for interlocutory appeal Judge Baer's decision denying the motion to dismiss.[5] Before the stay, Judge Baer set a vigorous schedule leading to a trial in January, 2012. If this Court lifts the stay now, the parties would need to modify some of the schedule set by Judge Baer but Mr.

---

[5] *See* March 4, 2011 Order denying certification of the defendant's motion to dismiss for interlocutory appeal in the ERISA Action. ERISA Action, Doc. No. 63.

Veera would intend to try the case in January. Thus, if this Court lifts the stay now, it will have successfully protected the Debtor by allowing it the uninterrupted ability to propose its Plan of Reorganization during the exclusivity period while now allowing Mr. Veera and the class to get back on track, heading for a January trial in the ERISA Action.

9. For these reasons, and those already stated by Mr. Veera in his previous filings, the Court should lift the stay and allow the ERISA Action to proceed.

## II. IF THE COURT MAINTAINS THE STAY, MR. VEERA REQUESTS VERY LIMITED DISCOVERY IN THE INTERIM THAT WILL ALLOW HIM TO PREPARE FOR MEDIATION WHILE IMPOSING A LIMITED BURDEN ON THE DEBTOR OR ITS PERSONNEL

10. If the Court is inclined to continue the stay for any additional time, Mr. Veera requests that the Court allow him to pursue some very limited discovery in the ERISA Action. In particular, Mr. Veera seeks the following three categories of discovery:

(i) Ambac should produce the deposition transcripts and exhibits from its pending litigation against EMC and Credit Suisse;

(ii) Mr. Veera wants to depose three former Ambac employees; and

(iii) Mr. Veera wants to obtain documents from two non-parties on which he served subpoenas before this Court stayed the ERISA Action.

11. First, if the Court maintains the stay, Mr. Veera seeks a copy of the deposition transcripts and exhibits from witnesses who testified in two cases that Ambac Assurance is now litigating: (i) *Ambac Assurance Corp. v. EMC Mortgage Corp. and JP Morgan Securities Inc. (f/k/a Bear, Stearns & Co.)*; and (ii) *Ambac Assurance Corp. v. DLJ and Credit Suisse*. The *EMC* and *Credit Suisse* cases involve some of the toxic transactions that Ambac Assurance guaranteed that are at issue in the ERISA Action. The transcripts and exhibits are a discrete set of documents that are easy to produce and that will help Mr. Veera and his counsel demonstrate how Ambac

6

repeatedly entered guarantees without properly investigating the underlying loans in the securitizations and how the guarantees exposed Ambac to enormous losses. To the extent that Ambac opposes producing those documents here because of confidentiality concerns, Mr. Veera and his counsel are already subject to a Confidentiality Order in the ERISA Action that would protect the confidentiality of any production that is designated as confidential. Additionally, if necessary, Mr. Veera and his counsel would agree to an appropriate protective order to govern this production.

12. Second, if the Court maintains the stay, Mr. Veera seeks to depose William McKinnon, Sean Leonard and Grant Gregory, who are all former officers or directors of Ambac and Ambac Assurance:

(i) *William McKinnon* -- Mr. McKinnon is a defendant in the ERISA Action who left the company in 2008 and has no role in the Debtor's reorganization. He was a fiduciary of the SIP and a member of the SIP's Investment Committee who also was the Chief Risk Officer of Ambac and Ambac Assurance and would have been well-aware of the company's exposure to massive losses on its guarantees. During the same time that Mr. McKinnon and the other fiduciaries were making Ambac stock available to the SIP participants as a retirement investment, he was unloading his own Ambac stock for considerable profit.

(ii) *Sean T. Leonard* -- Mr. Leonard was a fiduciary of the SIP and is a defendant in the ERISA Action but is no longer employed by the company. Mr. Leonard was the Chief Financial Officer of Ambac and would have been acutely aware of the company's exposure to massive losses on its guarantees of risky financial products. He was a member of the SIP's Investment Committee as well as the SIP's Administrative Committee and he signed many of the SEC filings for the company and the SIP. He was one of the point people for the company's

7

dealings with the ratings agencies and he would have known about the claims that Ambac was receiving for payments on its guarantees and the difficulty that Ambac was having estimating its losses during the Class Period. He also would know about how, at the same time that the SIP was offering Ambac stock as a retirement investment, he and other high-level officers of Ambac were refusing to elect to take any portion of their bonus pay in Ambac restricted stock, opting for cash instead.

(iii)   *Grant Gregory* -- Mr. Gregory was a director of Ambac who resigned either in 2007 or early 2008 and has no role in Ambac's reorganization. He is not a defendant in the ERISA Action.

13.   These three individuals have left the company and have no role in the Debtor's reorganization. Yet each of them has important information that will help Mr. Veera and his counsel better understand the fiduciary violations at issue in the ERISA Action.

14.   Third, if the Court maintains the stay, Mr. Veera seeks permission to pursue the subpoenas that he served before the stay on Robert Genader and Credit Suisse. Both are non-parties to the ERISA Action. Mr. Genader is the former Chairman and CEO of the company. He left Ambac in February 2008 and has no role in its reorganization. Credit Suisse was an adviser to the Board when Ambac was collapsing and it made certain presentations to the Board during the time period that is at issue in the ERISA Action. Credit Suisse also was the bank that securitized a number of the toxic financial transactions that Ambac guaranteed.

15.   Any argument by the Debtor that Mr. Veera should not have any of this discovery because it could somehow jeopardize the pending securities settlement or other potential transactions  is a veiled request to allow the Debtor to bury the truth. If the information is so

damaging that it could jeopardize a pending settlement or the Debtor's reorganization, it deserves to be disclosed now rather than hidden behind the stay.

16. Moreover, it is unlikely for a number of reasons that this discovery would disrupt the pending securities class action settlement or the Debtor's reorganization efforts. First, the securities settlement was reached by experienced and sophisticated counsel for the plaintiffs who elected to settle based upon the facts that they knew at the time and with full knowledge that there could be other, potentially helpful facts developed as the ERISA Action proceeded. Those securities attorneys are moving forward with their proposed settlement and have given no indication that they want to delay the settlement until after discovery proceeds in the ERISA Action. Nor have they sought to obtain any discovery produced in the ERISA Action. Similarly, there has been no attempt by anyone else to obtain the discovery from the ERISA Action, making it reasonable to believe that there will be no future attempt by anyone to obtain that discovery. However, even if someone attempts to obtain that discovery from the ERISA Action, most of it is protected against disclosure by the protective order already entered by Judge Baer in the ERISA Action which limits the way that Mr. Veera and his counsel may use confidential discovery. If Ambac simply designated the discovery as confidential under the terms of that protective order, Mr. Veera and his counsel would be limited to using it only for a proper purposes in the ERISA Action, meaning that the Debtor is significantly protected from the parade of horribles that it may suggest would result if Mr. Veera is allowed to obtain this discovery.

17. The parties in the ERISA Action have agreed to mediate the case on September 2, 2011 using a retired federal judge (Layn Phillips) as the mediator. By agreeing to mediate, Mr. Veera certainly did not agree to forego his ability to seek additional discovery, particularly

9

discovery that will help him and his counsel properly prepare for the mediation. Although agreeing to mediation is a positive step in the life of a case, it is by no means an assurance that the case will resolve. As a result, the Debtor should not be able to use the scheduling of the mediation as a way to further delay discovery. Instead, if the Court is inclined to maintain the stay, the Court should allow Mr. Veera to immediately obtain the limited discovery he seeks so that he and his counsel may properly prepare for the upcoming mediation.

18. Allowing Mr. Veera to obtain this focused discovery will not impose any undue burden on Ambac or its reorganization, but it will significantly advance Mr. Veera's ability to properly represent the class. Therefore, Mr. Veera requests that if the Court is inclined to continue the stay, it exercise its discretion to allow him to proceed with the proposed limited discovery.

Dated: July 15, 2011

Respectfully submitted,

/s/ *Stephen J. Fearon, Jr.*
Stephen J. Fearon, Jr.
Caitlin Duffy
Garry T. Stevens, Jr.
SQUITIERI & FEARON, LLP
32 E 57th St., 12th Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553

*Attorneys for Karthikeyan V. Veera*